## STEWART v. HOFFMEISTER et al.

Eastern Section.   May, 1932.

Petition for Certiorari denied by Supreme Court, October, 1932.

Lee, Price, McDermott & Meek, of Knoxville, for plaintiff in error. Steinmetz & Lowe and A. Y. Burrows, all of Knoxville, for defendants in error.

SNODGRASS, J. Defendants Hoffmeister and Charles were operating a bus or passenger line from Sevierville to Elkmont in East Tennessee and also a line from Knoxville to Sevierville, and John Fisher, defendant, was their driver on this line from Sevierville to Elkmont. They had taken out insurance under chapter 729 of the Private Acts of 1925. On or about the evening or night of August 6, 1928, after arrival at Elkmont, a joy ride party was gotten up composed of Kenneth Johnson, Bill Mallicote, John Fisher, Ford Bailey, Douglas Bane, Althea Wingo, and Margaret Stuart, deceased. The party, with the exception of Miss Wingo, who was picked up on the way, left the hotel about ten o'clock p. m. after the concert closed. They first delivered some papers that Fisher had brought up on his trip and had forgotten, and started out on the Gatlinburg road that led over the mountain. They passed through Gatlinburg, and, where they turned around, the two girls got out and seated themselves on the front fenders, where they rode in spite of protests from the other occupants of the car. Coming back through Gatlinburg, they stopped opposite the Riverside Hotel, when Fisher and two or three of the boys got out and made a fruitless effort to have them get back in the car. But they persistently refused and had stated that "if they couldn't ride out there they wouldn't ride at all." There had been no improper conduct by any one, it appeared, and their reason for so disposing themselves appeared to be that they found enjoyment therein, and so preferred to ride.

Defendant Fisher was asked to tell how the accident happened. His reply was:

"Well it was up grade about a mile before we reached this creek, little creek we crossed where the accident happened. I was going between fifteen and twenty miles an hour when I noticed the creek, I applied my brakes, I went through the creek at probably a speed of driving five miles an hour and stopped immediately after I noticed

she had fallen off from the front fender. There was just a slight jolt in going through the creek. No one was hurt except Miss Stuart.''

He said a little water splashed on the front of the car and a few drops on the windshield, that it wet the girls around the knees, but could not say for sure that it wet them all over. Said he went just two or three feet after Miss Stuart fell off.

Kenneth Johnson, one of the boys, testified that the creek was about ten feet wide and about a foot or a foot and a half deep that night; that the back end of the car was about five feet from the edge of the stream when it stopped; thought Miss Stuart was dragged about three feet. He said they had driven about five miles from where they turned around to where the accident happened. He testified that, as they approached the stream, Fisher speeded up, and that, when he got to the stream, he splashed water on them and clear back on the windshield, and was going about twenty miles an hour when he hit the stream, and just before did not think he was going over thirty anyway; that Miss Stuart fell off as they went up the opposite bank, probably right at the edge of the water. He said she was dragged about three feet; that her left leg was hung in the bumper, and they found her arm was broken. They took her back to Sevierville to Dr. Yarborough, and it was found that her arm had a very ugly break. Dr. Yarborough said it was the right humerus the best he remembered. He continued: ''I asked her if she was hurt anywhere else and she said no, her arm was about all that was hurting her then, so I spent a considerable time on her arm. I fixed it up and then made an X-ray picture and it wouldn't be right and I would have to do it over. I worked there a long time and after I got her arm fixed where I was willing to leave it I noticed her clothing was torn and I began to investigate further, and I found a very ugly laceration and tear in the right groin, near the thigh where the thigh fixes on the lower abdomen—a fairly deep tear.'' He said there was considerable filth in the wound, foreign substance, ''debris, we call it,'' and it was very hard to get at as it was fastened among the fatty tissues and was rather hard to get at; that he spent a good deal of time on that and told her that was a very serious condition there, or could be, because it had gained some few hours anyway and he told her that would have to be looked to very carefully. He cleansed the wound and used disinfectants and after treating her the best he could she was taken back to Elkmont and the next day brought to her home in Fountain City and other doctors called in when she was found to be in very serious condition. Blood poisoning set in. She was taken to the hospital where she died in a short time.

She disliked to have her folks know the circumstances of her injury, and so at her suggestion a story was fixed up that she fell off

a bank and broke her arm. She seemed to be a capable girl—educated in music, and was one of an orchestra playing at the hotel that summer. There was no serious conflict in the material testimony as to the immediate facts of the accident, differences not material in estimates as to speed, distance, etc. But one as to the declared purpose of Fisher to splash water on the girls at that creek, which he denied, but stated it was at another creek. But we think the proof is that he meant to strike the creek at a pretty good gait and to splash water on them, probably nettled at their refusal to come back into the car. At any rate, his action was such as to jolt her off the car, which doubtless would not have been done had he handled the car in passing over the creek in the careful manner which the circumstances required should have been done.

The first declaration was in two counts by the administrator against defendants Hoffmeister and Charles and Fisher, alleging that said defendants on August 6, 1928, were driving, running, and operating an automobile over, upon, and along the public highway in Sevier county, Tennessee, between the town of Gatlinburg and Elkmont in said county, in which automobile said defendants had undertaken, assumed, and agreed to transport the plaintiff's said daughter, Margaret Stuart, a minor twenty years of age, as a passenger therein; when said automobile which was thus being run, operated, and driven by said defendants reached a point on said road about four miles east of said town of Gatlinburg, said defendants then and there carelessly and grossly negligently drove, ran, and operated the same down a sharp declivity in said road, with such excessive force and violence, and without having said automobile under reasonable control and at such an excessive rate of speed, that the said Margaret Stuart was then and there thrown with great force and violence from her seat on said automobile, upon and to the ground and as a direct result the said Margaret Stuart, whose body and clothing were caused to be caught in the lower portion or side of said automobile as she was thrown therefrom, was dragged along and upon said road for a great distance, to wit ———— feet, and she was thereby then and there greatly and horribly lacerated, bruised, and wounded, and was caused great fear, fright, pain, suffering, and mental anguish, from all of which injuries aforesaid, occasioned as aforesaid, she languished for a period of six days, and as a direct result of which she finally died on August 11, 1928.

The second count is substantially the first, except that it is stated she fell from the automobile and was caught and dragged, and that while she was in this condition and plight, wholly unable to help or rescue herself from said place of peril, said defendants, who knew, or in the exercise of reasonable care should have known, of the plaintiff's said daughter's dangerous, perilous, and helpless condition and

predicament, and who did not then and there have said automobile under reasonable control, and who in the exercise of reasonable care could and should have been able to stop said automobile and avoided injuring the plaintiff's daughter, wrongfully and carelessly and grossly negligently continued thereafter to run, drive, and operate said automobile, thereby then and there dragging plaintiff's said daughter upon and along said road, etc.

To the case thus presented each of the defendants entered a plea of not guilty on May 13, 1929. Then on November 19, 1929, a summons was issued for the American Fidelity & Casualty Company, Inc., bringing it into the suit by service being acknowledged, and on March 11, 1930, an amended declaration was filed as a substitute declaring against Hoffmeister and Charles as a partnership engaged in business under the firm name of Smoky Mountain Transit Company and John Fisher, alleging that said defendants on said date were running and operating an automobile then and there owned by said Hoffmeister and Charles over, upon, and along the public highway in Sevier county, Tennessee, between the towns of Gatlinburg and Elkmont in said county in which the said defendants had undertaken, assumed, and agreed to transport the plaintiff's said daughter, Margaret Stuart, a minor twenty years of age, as a passenger therein, when as alleged in the first count she was thrown and injured as aforesaid.

The second count to this amendment alleges as in the first, but that she fell and in the perilous condition described she was dragged, etc.

It is also alleged in this declaration that ''at the time said defendants and Fisher were operating said automobile over and upon one of the regular roads and routes, between fixed termini, authorized and permitted to them by the Railroad and Public Utilities Commission of Tennessee between Knoxville, Knox County, Tennessee, and Elkmont, Sevier County, Tennessee; and the operation, at time and place aforesaid, of said automobile which was regularly being used by said defendants for the carrying of passengers over said road and route, had been and were then and there insured by the defendant American Fidelity & Casualty Company, as required by the provisions of Chapter 729 of the Private Acts of 1925, under and pursuant to which statute said automobile was licensed to operate,'' etc.

The third count of this amendment claimed ownership of automobile to be in the said partners and that Fisher was driving with Miss Stuart aboard as a passenger, the defendants, having assumed and agreed to transport her, carelessly and negligently operating the car. She was caused to be thrown and injured as previously described.

And it was thereupon alleged that on July 18, 1928, the defendant American Fidelity & Casualty Company, Inc., executed, issued, and deposited with the county court clerk of Knox county, Tennessee,

pursuant to chapter 729, Private Acts of 1925, a certain policy of insurance in the name of Smoky Mountain Transit Company, a copartnership composed of defendants Hoffmeister and Charles, whereby the company agreed to insure for the benefit and protection of the public, including the plaintiff and the plaintiff's deceased daughter in any sum up to $5,000 against injuries resulting from negligent operation of the automobile. Liability was claimed against the company under this contract of insurance.

The fourth count predicates the liability as though she fell from the automobile and was dragged as was previously described. Profert was made of the policy.

This amended declaration provoked a wealth of pleading. For instance, it was pleaded in abatement by Hoffmeister and Charles that: "The automobile involved in the accident set out in the declaration was not at the time of the accident on the business of the owners or operations, Boyd Charles and H. L. Hoffmeister, and that they nor neither of them were driving said automobile at the time of the accident."

The same plea was offered by defendant insurance company, with the additional insistence that the plaintiff's right of action occurred more than one year before said company was made a party, statute of limitation of one year.

These were pleas going to the merits in bar and not in abatement, and were properly demurred to.

The insurance company demurred also to the declaration, assigning twenty grounds of demurrer. Hoffmeister and Charles also demurred and assigned five grounds of demurrer. John Fisher also demurred, assigning the same five grounds. All the parties pleaded not guilty, but the insurance company set up additional pleas:

That it did not contract, presume, or agree as plaintiff in his declaration alleged.

That plaintiff does not come within the provisions of the policy, the statute of limitation of one year, the contract provision of the policy providing that suit must be brought within one year.

Plaintiff demurred to the sixth and seventh pleas of the insurance company. The demurrers filed by the plaintiff to the pleas in abatement of Hoffmeister, Charles, and the insurance company were sustained upon the ground that the matter set up in said pleas in abatement was not proper matter for plea in abatement.

The other question raised by said demurrer was pretermitted, the court stating that it was found unnecessary to pass upon at the time and was therefore not adjudicated. It was further agreed and stipulated by the order that the automobile described in said policy of insurance as a seven-passenger Studebaker, 1926 model, motor No. 2100028, is the automobile involved in this case, and is the auto-

mobile on which the decedent, Margaret Stuart, was riding at the time she was injured on or about August 6, 1928, and that said automobile at the time of said accident was owned by the defendants H. L. Hoffmeister and Boyd Charles, and the same was registered in the county court clerk's office of Sevier county, Tennessee, in the name of Smoky Mountain Transit Company, which company was, during the year 1928, a partnership composed of said defendants H. L. Hoffmeister and Boyd Charles. Said automobile was not registered in Knox county, Tennessee.

At the same May term the declaration was amended further to allege that:

"At the time of the accident the defendants Hoffmeister, Charles and Fisher were operating said automobile over and upon one of the regular roads and routes between fixed termini; authorized and permitted to them by the Railroad and Public Utilities Commission of Tennessee, between Knoxville, Knox County, and Elkmont, Sevier County, Tennessee; and the operation, at the time and place aforesaid, of said automobile, which was regularly being used by said defendants for the carrying of passengers over said road and route, had been and were then and there insured by the defendant American Fidelity & Casualty Company; as required by the provisions of chapter 729, Private Acts of 1925, under and pursuant to which statute said automobile was licensed to operate."

The court then, after sustaining the fifth and sixth grounds of the demurrer of the insurance company to the declaration, reconsidered and vacated the order and overruled all demurrers in an order as follows:

"This cause came on to be heard this day on the several demurrers of all the defendants to the plaintiff's declaration as amended, the Court having heretofore revoked and set aside its former ruling on one of said demurrers; and the Court having carefully considered all the grounds of all the demurrers of all the defendants herein and having heard argument of counsel is of opinion that none of said demurrers and none of the grounds thereof are well taken, it is therefore accordingly ordered, adjudged and decreed by the Court that all of the demurrers filed by all of the defendants herein and each and every ground thereof, be and the same are in all respects overruled and disallowed."

Defendants excepted, prayed an appeal, and it was disallowed for the present.

The court on motion struck out the second, third, fourth, and fifth pleas of the insurance company, and sustained plaintiff's demurrer to the sixth and seventh pleas of said insurance company.

The cause was submitted to a jury, and at the close of plaintiff's proof a motion for a directed verdict was sustained as to defendants

Hoffmeister and Charles and overruled as to John Fisher and tentatively so to the insurance company. At the close of all the proof, the motion was renewed as to defendant John Fisher and the insurance company, and sustained as to the latter, and the cause went to trial before the jury as against John Fisher when the jury returned their verdict as against Fisher, assessing the damages in the sum of $2,000, and judgment was entered against him for that amount. Motion for a new trial was made by the plaintiff and overruled. Motion for a new trial was made by defendant John Fisher and overruled. No motion for a new trial was made by the insurance company nor by Hoffmeister and Charles. These latter three defendants in whose favor the verdict was directed have filed the record for writ of error.

For the plaintiff two assignments are made that:

I. "The learned Judge erred in sustaining the motion of the defendant American Fidelity & Casualty Co., for a directed verdict in its favor when the undisputed facts and the law applicable thereto show that under the policy of insurance issued by said defendant and under chapter 729, Private Acts of 1925, pursuant to which statute said policy was issued, said defendant is liable for the wrongful death of the plaintiff's daughter caused by the negligent operation of said bus by the operator John Fisher, even though at the time said bus was not being used on the business of the owners Hoffmeister and Charles."

II. "The learned trial Judge erred in sustaining the motion of the defendants Hoffmeister and Charles for a directed verdict in their favor, when the undisputed proof and the law applicable thereto show that said defendants are liable for the wrongful death of the plaintiff's daughter caused by their employee's negligent operation of one of their public busses over one of the established routes, altho at the time said bus may not have been used on the business of said defendants."

Neither of these assignments, we think, is well taken. The defendants Hoffmeister and Charles were running a bus line from Knoxville to Sevierville and from Sevierville to Elkmont. These bus lines were operated on schedule time, and connections were made at Sevierville. The bus that was being used at the time this injury was effected was the one operated from Sevierville to Elkmont, and, when it came in on its last trip, at least after the delivery of the forgotten papers, was converted and used by the driver, John Fisher, and used for purposes of his own which had no connection whatever with his employment and duties as the driver of the bus. On the contrary, at night, and contrary to the directions of Hoffmeister and Charles, he was taking these folks on a joy ride. Miss Stuart may be said to have been riding as his guest on this occasion, and that it was through his personal negligence that the injury was effected as hereinbefore

indicated. So that the liability against him was properly determined. But there was no proof fixing any liability against Hoffmeister and Charles and the insurance company, and the court was not in error in directing the verdict in their favor. Neither do we think the policy of insurance covered such an enterprise as the one in which the accident happened.

It is not material, we think, under the circumstances of the act, the essential provisions thereof being expressly by indorsement incorporated into the policy, that the injury should have occurred in Knox county where it authorized some time, and possibly required, operation in the business of its owners, and necessitated an insurance against its negligent operation. But we think it is and was necessary to create a derivative liability that the negligence be committed by the owners of the car, or, what is the same thing, by their agent while it was being employed within the scope of the business of the owners.

It seems that the owners were maintaining a connected passenger line from Knoxville to Elkmont, and at this particular time this particular insured car was being operated between Sevierville and Elkmont, a section on this line; the service contemplated of each car being indicated by the following provision of one of the indorsements:

"In consideration of the reduced premium rate at which this policy is written and of the statement made by the assured that they own six vehicles but that their operation will require the use of only two busses regularly operated and four vehicles as spares, overload and substitute vehicles, listed herein, two of which will be operated regularly on schedule, over authorized routes, three as spare vehicles for the assured's use in the accommodation of overload of excess passengers on schedule over regular route and one vehicle as an emergency substitute vehicle in lieu of a vehicle listed herein," etc.

We think it can make little difference that this particular one of the six Studebakers listed in the policy for service in Knox was being used on the section between Sevierville and Elkmont. They were all intended to be used interchangeably and all insured for service of such a nature and in furtherance of a business of Knox county connections. The third section of the act provides that the bond or policy shall be filed with the clerk of the county court of the county in which the business or any part thereof is to be carried on. Nor are its benefits confined to citizens of Knox county or for injuries sustained therein. C. F. Kemp et al. v. Bud Caruther and Will Lester, 11 Tenn. App., 201. Putting in applicable provisions, said section 3 is as follows:

"Be it further enacted, That every person, firm or corporation operating public motor conveyances as aforesaid, shall execute, file and keep with the Clerk of the County Court of the county in which the business, or any part thereof, is to be carried on, a bond, or

insurance policy . . . payable to the State of Tennessee . . . in the sum of . . . $5,000 for each car operated in passenger service, which said bond or insurance policy shall be for the benefit of the public and shall bind the principal and obligor or insurer to make compensation for injury to persons whether passengers or not, and loss of, or damage to property, resulting from the negligent operation of such motor vehicles, and any person injured, or whose property is damaged by such operation of said vehicle, shall have the right to institute suit jointly in the courts of this State against the owner, or operator, of said vehicle and the obligor or insurer.''

The phrase, ''resulting from the negligent operation of such motor vehicles,'' must of course mean in this instance the negligent operation of the owners' agent or employee while engaged in the transaction of the owners' business, and should not be held to mean any negligent operation at any time or place by one who had wrongfully converted the car and at at the time was using it on a mission of his own, entirely disconnected with the owners' business and contrary to instructions.

The constitutionality of the statute is not material to be determined. Certainly there is no law against incorporating its provisions in the terms of a contract of insurance which was done in this case by the rider that was attached that in express terms made all provisions of the policy to conform to the terms of the act, though they might be found to the contrary notwithstanding.

But we do not think, contrary to the insistence of the plaintiff, that it was meant by the statute to make the owners or operators of the busses insurers of the car against negligence that might be committed by one who had stolen or converted the car as in this instance, and was using it contrary to instructions upon a mission of his own, as was Fisher, who is held personally liable for the injury to his guest. But the statute was designed to make compensation secure for any one who had sustained injury in which a legal liability against the owners had occurred, and should not be held to go as far as to make the owners or operators liable under the conditions described in this case, for that would be to penalize business and make it an unreasonable discrimination militating against the validity of the act if it were necessary to so determine.

We do not think the case of U. S. F. & G. Co. v. Allen, 158 Tenn., 504, 14 S. W. (2d), 724, 725, is in point. This case seems to have turned upon the point of the failure of Jones and Dillon to give notice of their transfer of the car which the statute required. They had taken out a policy of insurance under chapter 729 of the Acts of 1925, in the operation of the car between Gallatin and Nashville, and then sold the car to Neal, who was operating same at the time of injury in the same character of business. Neal himself had failed to

comply with the act regarding the protection of the public, and the machine still bore the license plates issued to Jones and Dillon by the county court clerk of Davidson county. The court said none of the parties had given notice to the county court clerk of any change of ownership in the car, nor had any assignment of the policy or bond issued to Jones and Dillon been made to Neal. Upon these facts the court held them all liable, stating that:

"Chapter 149 of the Acts of 1919, in section 23, provides:

" 'That every dealer or other person selling an automobile, auto truck, motorcycle, electric automobile or truck, or other motor vehicle, either new or secondhand, to any person in the state of Tennessee, shall within three days from date of sale notify the county court clerk of said sale, giving the name and address of purchaser, make, horse power and number of motor vehicle.' Section 24 of said act provides that any person who fails or refuses to notify the county court clerk of such sale and who fails or refuses to otherwise comply with the provisions of section 23 shall be liable to fine," etc.

The court said that:

"Our statutes requiring the registration of automobiles were enacted not alone for revenue purposes, but as a means of identification of the owner of any machine negligently operated to the damage of person or property and by way of protection to those so injured by such negligent operation," etc.

The plain inference is that, under the circumstances of such failure, Jones & Dillon continued with their security legally liable for such injuries. But had they complied with the statute and completed their transfer, etc., as provided by it, they would not have been liable.

Here these plaintiffs have violated no law. They made no transfer, and the sufficient reply is that the policy covered no such operation as appeared in the proof. Neither, be it said, does the declaration cover the case exhibited by the proof except as to the defendant John Fisher.

It is not believed that the case of Stovall v. N. Y. Indemnity Co., 157 Tenn., 301, 8 S. W. (2d), 473, 72 A. L. R., 1368, is in conflict with our conclusions. The policy covered as those "additionally assured" any person responsible for the operation of the car, "Providing such use or operation is with the permission of the named assured."

The Supreme Court, for reasons assigned in that case, held that the policy covered Thomas' trip in the afternoon to see his girl. The claim check which had been delivered to him to get it from the garage had been retained and evidenced authority in him to get it the second time and that it must be held, notwithstanding he was on a mission to see his girl, it was being used by the permission of the named in-

sured, and that he came under the provision of the additionally assured. That is not this case.

It is not believed that any of the other authorities cited in plaintiff's brief is authority to reverse this case. The demurrers of the defendants were properly overruled, and, as the technical record does not disclose any error, the failure to file any motion for a new trial by the defendants Hoffmeister and Charles and the insurance company renders their filing of the record for writ of error in other respects abortive, and it is dismissed.

All assignments are therefore overruled and the judgment of the lower court affirmed, with costs against appellants, save that one-third of the costs accruing in this court shall be paid by defendants, who filed the record for writ of error, and their securities.

Portrum and Thompson, JJ., concur.