# Richmond

## Helen Sordelett v. J. Herbert Mercer, Committee, etc.

November 25, 1946.

Record No. 3106.

Present, Holt, C. J., and Hudgins, Gregory, Eggleston, Spratley and Buchanan, JJ.

The opinion states the case.

*Thomas A. Williams* and *L. C. O'Connor*, for the plaintiff in error.

*John G. May, Jr.*, and *Robert Lewis Young*, for the defendants in error.

BUCHANAN, J., delivered the opinion of the court.

Helen Sordelett, plaintiff, on April 5, 1945, recovered a judgment for $1,000 against the committee of Samuel Stover, a convict, for damages caused her by the negligent operation of a motor truck by Stover.

Afterwards she had issued a summons on suggestion, claiming that by reason of the lien of an execution issued on said judgment there was a liability on Liberty Mutual Insurance Company to pay that judgment. This claim was based on a policy of insurance issued by the company by which it had agreed to pay, according to its terms and conditions, damages caused by accident arising out of certain uses of the truck.

The insured named in the policy were "Earl L. Noble, trading as Hertz Drive-Ur-Self System, and W. I. Worsham and Bros., or as interests appear;" and by its terms it also included any person using the automobile, "provided the actual use of the automobile is with the permission of the named insured."

W. I. Worsham & Bros. were a partnership engaged in the trucking business in Richmond. They leased some of their trucks, including the truck Stover was driving when the accident happened, from Hertz Drive-Ur-Self System. They conducted their operations pursuant to a certificate of public convenience and necessity issued by the State Corporation Commission as required by Chapter 129, Acts of Assembly, 1936, as amended by Chapter 51, Acts of Assembly, 1938 (Va. Code, 1942 (Michie), secs. 4097y(1) *et seq.*) The policy of insurance was obtained pursuant to the

requirements of section 12 of the Act (Code, sec. 4097y (12)).

Stover was an employee of W. I. Worsham & Bros., and the case now under review was tried before a jury on the sole question of whether Stover had the express or implied permission of his employers to use the truck on the occasion when the accident happened. The jury returned a verdict for the insurance company, herein referred to as defendant, on which judgment was entered by the trial court, and to that judgment this writ of error was awarded.

The plaintiff assigns as error the action of the court in giving instructions A-1 and C-1 at the request of the defendant, and in refusing to set aside the verdict as contrary to the law and the evidence.

Stover testified as a witness for the plaintiff, in substance, that when the accident occurred he was using the truck for a trip to get his supper and that he had permission of his employers to do that; and another witness for the plaintiff testified that she saw Stover driving the truck three times during the week of the accident and three times before that. The testimony for the defendant was in conflict with that for the plaintiff and was ample to support the conclusion that Stover was using the truck without permission, express or implied, and from that evidence the jury could well believe that the facts were these, practically as stated in defendant's brief:

On October 7, 1944, the day of the accident, and for some time prior, Stover had been employed by W. I. Worsham & Bros. as a helper on the trucks, and did some additional duty as night watchman at their place of business at Ninth and Canal streets in Richmond. He was not a truck driver and had no driver's license. His pay card showed that he received a helper's wage and not a driver's wage, which was somewhat higher. So far as his employers knew he had never driven any of the trucks. On the occasion of the accident he was given no permission to use the truck involved. As night watchman he had access to the keys to all the trucks and he took the truck that night without

permission or authority and drove it off on a mission of his own. At the time of the accident Stover had a woman named Dorothy Dennis riding with him. He had seen her at a beer garden that afternoon, about three o'clock, and again later in the afternoon, and had arranged for her to come to his employer's place of business that night about ten o'clock. She did not come as promptly as he wished so he went for her in the truck around ten o'clock and drove her to the Worsham place. The beer garden was at Seventeenth and Grace streets. After they had been at Worsham's place a little while they drove back down to the beer garden and then over other streets of the city looking for a girl for the other night watchman on duty that night at Worsham's place. Stover was drinking and was driving fast down Clay street when the collision occurred. There was no freight in the truck, and Stover did not get supper on these trips.

There is no substance to plaintiff's objection to instruction A-1. It correctly informed the jury as to the burden of proof and then cautioned them as to basing their verdict on speculation or sympathy. Generally, where a jury have been told to base their verdict on the evidence and the law, it is needless to tell them not to base it on something else, but no harm resulted here from doing so.

Instruction C-1 is as follows:

"The court instructs the jury that even though you believe from the evidence that Samuel Stover secured permission from Willie Worsham or Bartow Worsham to use the truck to get his supper, nevertheless, if you further believe that the said Stover either did not use the truck to secure his supper, or, having secured it, went off upon a mission or missions of his own, you should find in favor of the defendant."

It is clear that this instruction is not, as contended, in conflict with instructions Nos. 1 and 4, given at the instance of the plaintiff, by which the jury were told to find for the plaintiff if they believed that at the time of the

accident Stover was using the truck with the express or implied permission of his employers.

The main objection urged to this instruction, as we understand it, is, in effect, that under the terms of sections 4097y (12) and 4326a of the Code, the liability of this defendant was absolute after judgment was obtained against Stover, and that if Stover had permission to use the truck, it was immaterial whether at the time of the accident he had departed from the mission for which permission had been given, or whether or not he was on his master's business. This theory, it may be said, is hardly consistent with the theory of instruction No. 1 given at the plaintiff's request by which the jury were told that the sole issue was whether Stover had express or implied permission to operate the truck.

Section 4097y(12) provides in paragraph (a) that no certificate of convenience and necessity shall be issued by the State Corporation Commission to any motor carrier until the motor carrier has filed with, and had approved by, the Commission an insurance policy or bond as therein described; and in paragraph (d), that:

"The insurance bond, or other security, shall obligate the insurer or surety to pay any final judgment for damages sustained by the passengers, shippers, or consignees for injury to passenger or passengers, or for loss or damage to property entrusted to such motor carrier where cargo policy is required, and for any and all injuries to persons and loss of or damage to property resulting from the negligent operation of any motor vehicle."

The plaintiff's contention is that the concluding part of this paragraph, "and for any and all injuries to persons and loss of or damage to property resulting from the negligent operation of any motor vehicle," in effect, writes into every policy so issued a coverage upon every vehicle included in the policy, whether it is being operated in the carrier's business or not. To support this contention she cites *Worrell* v. *Worrell*, 174 Va. 11, 4 S. E. (2d) 343; *Gillard* v. *Manufacturers' Cas. Ins. Co.*, 92 N. J. L. 141, 104 A. 707,

aff'd 93 N. J. L. 215, 107 A. 446, and *Boyle* v. *Manufacturers' Liability Ins. Co.*, 96 N. J. L. 380, 115 A. 383.

The *Worrell Case* has no application here. In the *Gillard* and *Boyle Cases* there had been judgments recovered against the named insured for injuries inflicted while the vehicles covered were engaged in their business. It was held that violations of the terms of the policy by the named insured could not affect the rights of the public who claimed under its provisions, nor could the provisions of the policy abridge the rights granted by the statute to the injured persons. These cases do not aid the plaintiff beyond the point that the statute controls if there is conflict between it and the insurance policy. We have no quarrel with that conclusion. See *Maxey* v. *American Cas. Co.*, 180 Va. 285, 23 S. E. (2d) 221.

In Appleman, Insurance Law and Practice, Vol. 7, p. 309, sec. 4471, this is said:

"*Use by Driver for Independent Purpose.* A statutory bond or policy follows the truck covered thereby and its driver in the discharge of his duties, so long as he remains within the line and scope of his agency. It does not render the motor carrier liable for the acts of an independent contractor, nor does it render the insurer liable for injuries to a passenger at a time when the driver was not engaged on business of the owner. When the driver deviates from his authority and his instructions, no liability will generally arise.

"So, when it appears that the driver is acting wholly on a mission of his own, or is using the truck for pleasure purposes, it has been held that the insurance company has no liability. This is particularly true where such driver is some distance away from the route to be followed, or that the loss occurred solely upon the route followed by him in using the vehicle for his own purposes. Neither the insurance policy nor the statute will be construed to impose liability in such a situation. A different result would obtain where personal liability was imposed upon the named insured."

In *Stewart* v. *Hoffmeister,* 16 Tenn. App. 495, 65 S. W. (2d) 220, it appears that the defendants were operating a passenger bus line between points in Tennessee. The injury to the plaintiff's intestate occurred when the defendants' driver was operating one of the buses on a mission of his own. The Tennessee statute provided that every person operating a public motor conveyance should execute and file a bond or insurance policy for the benefit of the public binding the insured to make compensation for injury to persons and property "resulting from the negligent operation of such motor vehicles." In a suit against the insured and insurer the court said:

"The phrase, 'resulting from the negligent operation of such motor vehicles,' must of course mean in this instance the negligent operation of the owners' agent or employee while engaged in the transaction of the owner's business, and should not be held to mean any negligent operation at any time or place by one who had wrongfully converted the car and at the time was using it on a mission of his own, entirely disconnected with the owners' business and contrary to instructions."

In *Holder* v. *Haynes,* 193 S. C. 176, 7 S. E. (2d) 833, the accident upon which the suit was based occurred while a truck driver was using one of his employer's trucks for his own purpose and against instructions. The insurance in that case was issued under the requirements of section 8511, Code of Laws of South Carolina, 1942, providing:

"The commission shall, in the granting of a certificate, require the applicant to procure and file with said commission liability and property damage insurance, * * * on such motor vehicle or vehicles to be used in the service aforesaid * * * insuring or indemnifying passengers or cargo and the public receiving personal injury by reason of any act of negligence, and for damage to property of any person other than the assured; * * * ."

In dealing with the question whether the insurer could be held liable under the provisions of said section, notwithstanding the owner of the truck was found not to be liable

(W. I. Worsham and Bros. were dismissed as parties defendant in the action resulting in judgment against Stover), the court said:

"The argument is that the purpose of the requirement that the owner of the motor vehicle, applying for license, shall procure and file with the commission insurance or surety bond, is not to protect only against the negligence of the owner and his agents, but from any act of negligence arising from the operation of the truck by anyone. Let us analyze the provisions of section 8511. * * * *

"If the proposition of the respondent were the law, if any owner of a motor vehicle, who before he can get a license to do business must get insurance or a surety bond, should leave his motor vehicle on the street while attending to his business and someone took possession of it and, while thus unlawfully in possession of it, was guilty of a negligent act inflicting injury on another, could this render the insurance company liable, although neither the owner of the motor vehicle nor his agent is liable? The suggestion is utterly illogical. No insurance or surety company would assume any such liability or make any such contract and it would become impossible to comply with this requirement of the Public Service Commission."

Language in statutes of other States similar to that in section 4097y(12), (d) has frequently been considered by other courts on contentions like that made by the plaintiff here. On such occasions it has been generally held that such language in such statutes was not meant to create absolute liability without regard to the purpose for which the vehicle covered by the insurance was used. See note, 141 A. L. R. 628; *Foster* v. *Commercial Standard Ins. Co.*, 31 F. Supp. 873, aff'd 121 F. (2d) 117; *Hawkeye Cas. Co.* v. *Halferty*, 131 F. (2d) 294; *Simon* v. *American Cas. Co.*, 146 F. (2d) 208, aff. *American Cas. Co.* v. *Morris*, 51 F. Supp. 889.

It was not the purpose of section 4097y (12) to require the insurance policy or bond issued in pursuance thereof to cover the motor vehicle in all circumstances,

regardless of the relation between its owner and its driver, and regardless of whether it was being used in the owner's business or not. The Act of which this section is a part, as shown by its title, was for the purpose of providing for the regulation, supervision, and control of those owning or operating motor vehicles used for the transportation of persons or property for compensation. Paragraph (j) of section 1 of the Act states that the "services" and "transportation" to which the Act applies includes all vehicles operated by, for or in the interest of any motor carrier. Paragraph (d) of section 12 (Code, sec. 4097y (12)) is to be read along with the other sections of the Act, and when that is done it is plain that it was not meant to require that before any person could engage in the business of a motor carrier he must have insurance by which the insurer will be held to pay for the damage done by any vehicle owned or leased by him, even though it was being used by a stranger, without his knowledge and against his wishes and for a purpose having no relation to his business. The insurance policy that is the foundation of this action does not so provide, and it is not the effect of the statute to put such a provision in it.

The plaintiff further contends that instruction C-1 is in contravention of section 4326a of the Code which provides in the first paragraph thereof, so far as we are concerned here, that no policy of insurance against loss or damage to property caused by animals or by any vehicle operated by any motive power, and for which loss or damage the person insured is liable shall be issued or delivered, unless such policy shall contain a provision with respect to the insolvency or bankruptcy of the insured; and then follows this paragraph:

"No such policy shall be issued or delivered in this State, to the owner of a motor vehicle, by any corporation or other insurer authorized to do business in this State, unless there shall be contained within such policy a provision insuring such owner against liability for damages for death or injuries to person or property resulting from

negligence in the operation of such motor vehicle, in the business of such owner or otherwise, by any person legally using or operating the same with the permission, express or implied, of such owner."

Her contention is that if Stover had permission to use the truck, then under this section the policy covered the operation whether Stover was using it in the business of the owner or for any other purpose; and this because of the language of the statute, "in the business of such owner or otherwise."

Assuming, but not deciding, that this statute which deals with a policy issued "to the owner of a motor vehicle," is applicable to this case, there are two answers to this contention. The first is that the express or implied permission referred to in the statute means the express or implied permission to use or operate the motor vehicle either in the business of the owner or for any other purpose for which express permission was given or as to which it may be implied that permission was given. Permission to do a specific thing is not permission to do all things.

The other answer is that the instruction simply told the jury that if Stover had permission to use the truck to get his supper, but was not using it for that purpose, but for a purpose of his own, they should find for the defendant. In the light of the evidence this was simply telling the jury that if Stover was using the truck at the time of the accident to hunt up a girl companion for his fellow-worker, then he was not using it under his permission to get his supper,—an obviously sound proposition, and in complete accord with *Phoenix Indemnity Co.* v. *Anderson,* 170 Va. 406, 196 S. E. 629, and this observation in that case is pertinent here: "In *Frederiksen* v. *Employers' Liability Assur. Corp.,* 26 F. (2d) 76, it was held that one who was given an automobile with permission to attend a funeral had no permission to go thereafter on a joy ride."

Instruction C-1 in no wise conflicted with the provisions of sections 4097y (12) or 4326a. The jury were

properly instructed, the verdict was well supported by the evidence, and the judgment thereon was plainly right.

The defendant asserts in its brief that as a matter of law the plaintiff is not entitled to recover. This is on the ground that under the terms of the insurance policy its liability was limited to damages caused by the negligent operation of the truck while used commercially in the business of W. I. Worsham and Bros. as local truckmen.

Defendant says that it realizes that under rule 15 of this court, as interpreted in *Singer Mfg. Co.* v. *Bryant,* 105 Va. 403, 54 S. E. 320, it is precluded from assigning cross-error since it seeks only an affirmance of the judgment below, but it wants to rely upon the point as further ground for affirmance. Since further ground is not needed, a conclusion here on the point would not be of material value, and we need not accept the invitation to enter upon a discussion of it.

The judgment of the trial court is affirmed.

*Affirmed.*