### TRAVELERS INDEMNITY CO. v. NEAL.
### No. 5901.

United States Court of Appeals
Fourth Circuit.

Argued June 28, 1949.

Decided July 27, 1949.

J. Segar Gravatt, Blackstone, Va. and M. Wallace Moncure, Jr., Richmond, Va., for appellant.

Aubrey R. Bowles, Jr., Richmond, Va. (L. Mercer Smith and Bowles, Anderson & Boyd, Richmond, Va., on the brief), for appellee.

Before PARKER, Chief Judge, and SOPER and DOBIE, Circuit Judges.

DOBIE, Circuit Judge.

Grace Bagley Neal, as Administratrix of the Estate of Algie Neal, deceased, instituted suit in Nottoway County, Virginia, against the Administrator of the Estate of Willie Postell, deceased, and W. L. Bridgforth. Judgment was entered in such suit in favor of plaintiff against the estate of Willie Postell for the wrongful death of her decedent, Algie Neal, in the sum of $15,000 on the 14th day of November, 1947. Execution was issued on this judgment and returned "no effects." A civil action in the United States District Court for the Eastern District of Virginia by Grace Neal, Administratrix, was then instituted against the Travelers Indemnity Company which insured Mrs. W. L. Bridgforth under an automobile policy in full force and effect at the time of the accident which caused the death of Algie Neal. Plaintiff contended that this policy covered the judgment procured against Willie Postel, operator of the insured automobile of Mrs. W. L. Bridgforth. The court submitted the issue to a jury and upon its verdict entered judgment against The Travelers Indemnity Company. From this judgment The Travelers Indemnity Company appeals.

The pertinent language of the policy in this connection is contained in what is known as the Omnibus Coverage Clause. Section 4326a of the Code of Virginia requires the language of such section to be considered as written into every insurance policy, whether contained therein or not. The pertinent provisions of the policy are: "III. Definition of 'Insured.' The unqualified word 'insured' wherever used in coverage A and C and in other parts of this policy, when applicable to such coverages, includes the named insured and, except where specifically stated to the contrary, also includes any person while

using the automobile and any person or organization legally responsible for the use thereof, provided the actual use of the automobile is with the permission of the named insured."

Section 4326a of the Code of Virginia reads: " * * * No such policy shall be issued or delivered in this State, to the owner of a motor vehicle, by any corporation or other insurer authorized to do business in this State, unless there shall be contained within such policy a provision insuring such owner against liability for damages for death or injuries to person or property resulting from negligence in the operation of such motor vehicle, in the business of such owner or otherwise, by any person legally using or operating the same with the permission, express or implied, of such owner."

The only question before us is whether there was sufficient evidence for submission to the jury of the question whether, at the time of the fatal accident, Willie Postell was using the car with the permission, express or implied, of Willie Bridgforth. We think this question must be answered in the affirmative and that the judgment below must, accordingly, be affirmed.

The facts which the evidence tended to show may be briefly summarized.

Willie Postell, driver of the automobile at the time of the accident, had been for fifteen years a trusted employee and member of the Bridgforth family group. Willie Postell was part farmhand and part chauffeur. His wife was the family cook. Both lived on the Bridgforth place.

Willie Postell and his wife usually attended the Methodist Church in nearby Kenbridge on the second and fourth Sunday in each month. Willie Bridgforth had frequently lent the car to Willie Postell for that purpose. It seems clear that the car was so lent whenever it was asked for and it was convenient to the family to grant Willie Postell's request. Willie Postell had also been allowed to use the car on numerous other occasions to visit his mother.

On the morning of November 10, 1946, Willie Postell requested the use of the car to take his wife to church at Kenbridge. Willie Bridgforth granted the permission, but told Postell to return the automobile by one o'clock because he wanted to take his children in the car to visit relatives during that afternoon.

Willie Postell took the car and set out for church with his wife and child around ten-thirty or quarter to eleven. Two brothers of Bertha Postell started out with the Postells from the Bridgforth farm. These brothers, in fact all of the persons in the automobile at the time of the accident except one, were Bertha Postell's close kin, and either were or had been employees of or servants in the Bridgforth household. Bridgforth had reason to believe that Postell had, on prior occasions, picked up people he knew while driving the automobile. Bridgforth had never objected to this practice.

Willie Postell dropped his wife and the child at the church with the statement that he would be in later. He then drove from the church to a house, in sight of the church, where another of his wife's brothers lived. There he met the brother, James Robertson, who asked Willie to take him to Cedar Creek Baptist Church, about seven or eight miles from Kenbridge. The two other brothers who had ridden from the Bridgforth farm, remained in the automobile.

Willie agreed to take James Robertson to Cedar Creek Baptist Church. There were several routes, with varying distances, by which one might go from Kenbridge to Cedar Creek. Willie set out for Cedar Creek on Route 40, which was in the general direction of Blackstone. Willie passed the first turn-off to Cedar Creek and his attention was then called to it. The accident happened about eight miles from Kenbridge, but still on a highway by which one may go from Kenbridge to Cedar Creek, though a "little out of the way."

The exact time of the accident could not be determined. No stop was made between Kenbridge and the point of the

382

collision. The Postells and Bertha's two brothers left the Bridgforth farm probably between ten-thirty and a quarter to eleven and went straight to the Kenbridge church. James Robertson thought it was after 12 o'clock when they left Kenbridge for Cedar Creek. John Henry Robertson, it seems, was still expecting to be in time for the start of the Methodist Church services at Kenbridge, after James Robertson had been taken to Cedar Creek.

Willie Bridgforth, after learning of the accident, went over to the scene of the collision. He did not know until he arrived there that his car and Willie Postell were involved in it and he arrived at the scene about two or two-fifteen o'clock.

The occupants of the Bridgforth car were not on any joy-riding journey, hunting for beer, or any mission of that kind, either at or before the time of the accident. They were on the way to Cedar Creek by a somewhat roundabout route which was a little out of the way.

Important here are excerpts from the testimony of Willie Bridgforth as to the conversation between him and Willie Postell when the car was lent to Postell:

"Q. You are a reasonable man and I hope I am. Willie said, 'I want to go to church,' and you said, 'Okay.' That is about the deal? A. He said, 'I want to go to Kenbridge.'

"Q. And you said 'Okay?' A. Yes.

"Q. You didn't inquire anything further? A. No, sir.

"Q. You said, 'All right, you can have the car?' A. Yes, 'And bring it back by one o'clock.'" Bertha Postell confirmed this.

Bridgforth agreed that, if Willie Postell had asked for the automobile to go to Cedar Creek Church, he would just as readily have granted that permission. It seems a fair assumption that he would have loaned the automobile to Willie for any reasonable personal use, provided he was not going too far.

While Bridgforth never loaned Willie the car just to ride around in and burn up gas, the evidence tends to show that he never refused Willie the use of the car for a reasonable purpose within a reasonable area, except when the use of the car by Willie was inconvenient to the need for its use by him or his family.

"Q. So your idea is that your limitation on Willie's use of the car was to be described only in miles? A. Yes.

"Q. The distance he was going? A. Yes, sir.

"Q. I ask you this, sir: The only reason in your own mind for not letting him have it was the question of a reasonable area in which he could drive it? A. Yes.

"Q. And if he wanted it for any purpose, reasonable purpose, within what you considered a reasonable area, you would have let him have it? A. Yes, sir."

* * *

"Q. The main thing that was on your mind about this whole business was that you wanted the car back by one o'clock? A. Yes, sir.

"Q. That is the only reason that you had anything to say about that, that you wanted it back at one o'clock because you wanted to take the children to see their grandfather? A. Yes, sir."

When Bridgforth was later recalled to the stand, his testimony tended to limit the scope of the use of the car by Postell disclosed in his evidence; but Bridgforth again admitted he gave Postell no prohibition against going past Kenbridge and stated that Postell "just went farther than I told him to go."

We next proceed to a brief discussion of the applicable Virginia law. In Jordan v. Shelby Mutual Plate Glass & Casualty Co., 4 Cir., 1944, 142 F.2d 52, we reviewed at some length the Virginia cases in this field, decided before that opinion was written. It would serve no useful purpose to discuss again the Virginia cases therein reviewed. Nor are we impressed by the contention of appellant's counsel that cases in Virginia decided subsequent to the Jordan case have appreciably narrowed the scope of what constitutes implied permission for the use of an automobile in the present connection. We shall, however, advert briefly to these subsequent cases later. Certainly we read nothing in these

subsequent cases that in any way impairs the validity of two observations we made at the conclusion of the Jordan opinion, 142 F.2d at page 57: "It is well settled that dubious provisions in insurance policies are to be construed adversely to the insurer. Equally is it true that the 'omnibus clause' statute, as remedial legislation, must be liberally interpreted to subserve the clear public policy, reflected in the statute, to broaden the coverage of automobile-liability policies."

From the Jordan opinion, too, 142 F.2d at page 56, we append one further quotation, peculiarly applicable to the instant case before us: "In the cases of the entrustment of the car to another for purely social purposes, a bailment for the sole benefit of the bailee, usually there exists between the bailor and bailee a rather close relationship, either kinship or friendship. Thus, in the Jones case, the bailee was the son of the bailor, and in the Hoge case the bailee was the wife of the bailor. And, usually, as to the extended use by the bailee of the automobile going beyond the express permission of the bailor, the permission of the bailor may well be implied. The extended use is the same type of use, for social purposes, as the use expressly permitted. Thus, if a father lends his car to a son for the purpose of attending a dance at the Hilltop Country Club, it is not difficult to imply, from the whole milieu of surrounding facts and circumstances, permission to use the car for the purpose of driving, after the dance, to a restaurant."

Great stress is laid by counsel for appellant upon the Virginia cases (decided since the Jordan case) of Sordelett v. Mercer, 185 Va. 823, 40 S.E.2d 289, and State Farm Mutual Automobile Insurance Co. v. Cook, 186 Va. 658, 43 S.E.2d 863.

The opinion of Mr. Justice Buchanan in the Sordelett case contains only a brief discussion of the omnibus clause statute, did not cite the Jordan case and contains little if anything that would afford comfort to the appellant in the instant case. The facts in the Sordelett case were utterly different from those in the case before us and there was a serious conflict in the evidence as to the nature and extent of the permission for the use of the automobile. Thus we quote from head-note number 9 of the Sordlett case, 185 Va. at page 826, 40 S.E.2d 863:

"The driver testified that when the accident occurred he was using the truck to get his supper and that he had permission from his employers to do that, but the insurer's evidence was that the driver was using the truck without permission and he was using it at the time of the accident to find a girl companion for a fellow-worker. He was employed as a helper and not a truck driver and had no driver's license and so far as his employers knew he had never driven any of their trucks. The jury returned a verdict for the insurance company.

"Held: That the verdict was well supported by the evidence."

In the Cook case, the opinion of the late Mr. Justice Browning appears to be the latest pronouncement of the Virginia Supreme Court of Appeals on the "omnibus clause" statute. The facts of the Cook case were much more similar to the facts of the instant case than were the facts of the Sordelett case. We quote from head-note number 9 in the Cook case, 186 Va. at page 660, 43 S.E.2d 863:

"The truck was being used by an employee of the owner who had permission to take it to his home each night and who was not prohibited from using it for his own pleasure and purposes; the owner had seen him using the truck for his own purposes, and subsequent to the accident he continued to take the truck to his home. At the time of the accident the employee was using the truck for his own pleasure and without the knowledge of the owner.

"Held: That the conclusion that permission from the owner to the employee who used the truck ought to be implied was well warranted by the evidence." The case was heard before the trial court without a jury and judgment entered by the trial court against the insurer was sustained by the Virginia Supreme Court of Appeals.

Appellant's counsel before us laid great stress (in both the brief and oral argument)

on this quotation from Mr. Justice Browning's opinion in the Cook case, 186 Va. at page 665, 43 S.E.2d at page 866:

"This has brought about two schools of judicial thought as to the matter with which we are now concerned. Some courts take the view, broadly stated, that express permission for a given purpose implies permission for all purposes. Stovall v. New York Indemnity Co., 157 Tenn. 301, 8 S.W.2d 473, 72 A.L.R. 1368, and annotation beginning at page 1375; Dickinson v. Maryland Cas. Co., 101 Conn. 369, 125 A. 866, 41 A.L.R. 500.

"Other courts adhere to a somewhat stricter construction and hold that before the person using the automobile becomes an additional assured under the omnibus clause, permission must be expressly or impliedly given for that use. See cases cited in annotation, supra, 72 A.L.R. at page 1403.

"We hold to the latter view in Virginia. In Sordelett v. Mercer, 185 Va. 823, 40 S. E.2d 289, 294, we said (185 Va. 835) in reference to the meaning of the concluding sentence of section 4326a involved here that 'the express or implied permission referred to in the statute means the express or implied permission to use or operate the motor vehicle either in the business of the owner or for any other purpose for which express permission was given or as to which it may be implied that permission was given. Permission to do a specific thing is not permission to do all things.' To the same effect are Phoenix Indemnity Co. v. Anderson, 170 Va. 406, 196 S.E. 629; Jordan v. Shelby Mut. Plate Glass etc. Co., 4 Cir., 142 F.2d 52; Frederiksen v. Employers' Liability Assur. Corp., 9 Cir., 26 F.2d 76."

We do not read this opinion as repudiating the so-called "liberal rule" of the interpreting the omnibus clause" statute. Mr. Justice Browning was merely repudiating (we think quite properly) the rule that "express permission for a given purpose implies permission for all purposes." And the Jordan case (together with other cases supporting a liberal rule of construction here) was cited with approval. And further on in his opinion, 186 Va. at page 666, 43 S.E.2d at page 867, Mr. Justice Browning was careful in stating: "The *trend in Virginia* of legislative enactment as well as *judicial determination and construction* has been towards *liberalizing and broadening* the coverage provision of liability insurance policies." (Italics ours.)

Reference might be made to the opinion of United States Circuit Judge Martin in the very recent case of Yorkshire Indemnity Co. v. Collier, 6 Cir., 1949, 172 F. 2d 116, and to United States Fidelity & Guaranty Co. v. Hall, 237 Ky. 393, 35 S.W. 2d 550.

In brief, we have here the case of a master voluntarily (it would seem almost gladly) giving possession of a motor car to a tried and trusty servant (as had often been done before) for the purely social (and altogether laudable) purpose of enabling the servant to take his wife to church at Kenbridge, with a caution that the car must be back by one o'clock, since the master would need it at that time. After the wife was deposited in the Kenbridge church, the servant embarked upon a variant (but strictly similiar) social mission of driving his wife's brother to Cedar Creek Church, though "a little out of the way," when the fatal accident occurred.

Under these circumstances (and other facts set out earlier in this opinion), we think the District Court, applying the Virginia rule in interpreting the "omnibus clause" statute (which we think is, and ought to be, liberal) quite properly submitted to the jury the question whether (under this statute) Willie Postell was using the car with the "implied permission" of Bridgforth. The jury answered this question in the affirmative. We see no reason for disturbing the jury's verdict and the judgment thereon entered.

The judgment of the District Court is affirmed.

Affirmed.