### THE FIDELITY AND CASUALTY COMPANY OF NEW YORK, A CORPORATION v. RICHARD HARLOW.

June 19, 1950.

Record No. 3651.

Present, Hudgins, C. J., and Gregory, Eggleston, Spratley, Buchanan and Miller, JJ.

The opinion states the case.

*Sands, Marks & Sands,* for the plaintiff in error.

*George E. Haw* and *F. Byron Parker,* for the defendant in error.

GREGORY, J., delivered the opinion of the court.

An action at law was brought by Richard Harlow against Edward Swoope in the circuit court to recover for personal injuries received by him in an automobile collision between a tractor with no trailer attached, which was being operated by Swoope, and a vehicle in which Harlow was riding. A judgment was recovered in favor of Harlow for $2,500, upon which an execution was issued and returned "no

effects". This proceeding was then brought by Harlow against the Fidelity and Casualty Company of New York, carrier of liability insurance upon the tractor which was owned by the Tidewater Express Lines, Inc. It is claimed that Swoope was an additional insured under the policy.

The omnibus provision in the policy applicable here and covering those insured, in part, is as follows: " * * * Any person, while using the automobile, * * * provided further, the actual use is with the permission of the named insured * * *."

The above policy provision is required by Code, 1950, section 38-238, which is, in part, as follows: "* * * In the operation of such motor vehicle, in the business of such owner or otherwise, by any person legally using or operating the same with the permission, express or implied, of such owner."

By agreement of counsel, all questions of law and fact were submitted to the court without the intervention of a jury, and a judgment was entered by the court in favor of Harlow against the Fidelity and Casualty Company of New York for the $2,500 and interest.

The sole question now before the court is whether Edward Swoope, who was using the tractor at the time the plaintiff, Harlow, received his injuries, was operating the same with the implied permission of the owner, the Tidewater Express Lines, Inc.

It was stipulated and agreed between counsel at the time of trial as follows:

"1. At the time of collision Edward Swoope was operating a tractor owned by Tidewater Express Lines, Inc., and no trailer was attached thereto.

"2. That some time prior to the collision on the night of the accident in question, Edward Swoope uncoupled the tractor from his loaded trailer which was parked in the vicinity of his home, and was, at the time of the collision, in the company of a girl and another man, riding in the tractor with him, upon his own pleasure."

Swoope had been employed as a truck driver for the Tidewater Express Lines, Inc., since October 1, 1945, and had been driving for his employer continuously from that time until the date of the collision which occurred on December 15, 1946 at 1:25 a. m. He had operated the tractor involved in this collision for 20,000 miles, or for about 4,000 miles per month. It was customary for him to take the tractor and trailer home with him on weekends and on some nights during the week, and it was kept in the field next to his house. He had also kept it in a parking lot about a block from his home.

Generally the trailers were loaded in the evening for an early morning start, and the drivers were instructed to park the tractors and loaded trailers at or near their homes on those occasions. Swoope testified (and his testimony is not contradicted), that he had instructions never to detach the tractor from the trailer for personal use; that he had never been given permission by any official of the company to use the tractor for his personal use; that Mr. Prillaman, the local manager for the owner, had specifically instructed him not to ever use the equipment for personal use, and that when he took the tractor for his personal use he attempted to conceal this unauthorized use from Mr. Prillaman. The testimony of Swoope is, to a large extent, corroborated by that of Mr. Prillaman. There is no testimony to the contrary.

Prillaman lived about three blocks from where Swoope lived and kept the tractor-trailer. After it had become known that Swoope had used the tractor for personal trips, under the rules of the owner-company he should have been promptly dismissed, but according to the testimony of Prillaman, which is not contradicted, he notified the headquarters of the owner-company in Baltimore, and was authorized from headquarters to retain the services of Swoope.

The court found that there was an implied permission within the meaning of the terms of the policy for Swoope

to use the tractor for his own purposes and held the insurance company liable. In the opinion of the court this is said: "When we consider all of the facts and circumstances connected with this case; the fact that the tractor truck was entrusted to the care of Swoope every night in the week, and the keys left in his possession; that the tractor could be disconnected from the trailer in less than one minute; that the tendency of the average person having the keys to a motor vehicle is to operate the same just as Swoope had been operating the tractor in question eight or ten times for his own purposes over a period of several months before the accident occurred; that Prillaman lived within three blocks of where the truck was parked in a thickly settled community where he would be likely to hear of Swoope's expeditions with the trailer and when he had positive proof of the fact that Swoope had been using the tractor for personal trips instead of promptly dismissing, he obtained authority to keep Swoope in the employment of the company for which Prillaman was the Richmond manager, it is the conclusion of the court that Swoope had implied permission to operate the tractor as he did."

We cannot agree with the foregoing conclusion of the trial court, for here we have uncontradicted evidence of two witnesses who testify positively and definitely that Swoope was never given permission to use the tractor at any time except on the business of the owner, but on the other hand had been given express instructions forbidding him to use it for his personal benefit, and in case of a violation of the instructions he had been told that he would be summarily dismissed.

We do not recall that we previously have had a case entirely like the one at bar on the facts. Cases of this kind must be decided upon their peculiar facts. The law on the subject in Virginia has been very well settled and there is not much difficulty about it. The difficulty arises in its application to varying facts. The statute is remedial and must be liberally interpreted to subserve the clear

public policy reflected in it, which is to broaden the coverage of automobile liability policies. In defining "implied permission", and applying it to the facts of the many cases we have had, this court has been liberal in its interpretation and application, and has gone far in holding insurance carriers liable.

In holding that there was an implied permission within the meaning of the policy and of the statute (section 4326a of the Code of 1942, Michie; now section 38-238 of the Code of 1950), the court relies largely upon the case of *State Farm Mut. Automobile Ins. Co.* v. *Cook*, 186 Va. 658, 43 S. E. (2d) 863, 5 A. L. R. (2d) 594 and annotation. Other late cases which held that there was an implied permission are *Robinson* v. *Fidelity, etc., Co.*, 190 Va. 368, 57 S. E. (2d) 93, and *Liberty Mut. Ins. Co.* v. *Tiller*, 189 Va. 544, 53 S. E. (2d) 814. Late cases holding that there was no implied permission are *Phoenix Indemnity Co.* v. *Anderson*, 170 Va. 406, 196 S. E. 629, and *Sordelett* v. *Mercer*, 185 Va. 823, 40 S. E. (2d) 289.

The lower court based its decision largely upon the case of *State Farm Mut. Automobile Ins. Co.* v. *Cook, supra.* That case seems to be distinguishable from the one at bar. There the owner had never forbidden the employee to use the truck for his personal use. On the other hand, previous to the time of the accident, the owner had seen the employee using the truck for his own personal use and made no objection. Also previous to the accident at different times the owner had given the employee permission to use the truck for his own purposes, and since the accident the owner still permitted the employee to take the truck home, and said that if he used it for his own personal use "it would be on his own hook".

In the case at bar, as we have already stated, Swoope, the employee, had been expressly forbidden to use the tractor for his personal use or to detach the tractor from the trailer for personal use. Prillaman, his immediate superior, had never seen or known of Swoope or any other

driver using the tractor for personal use, nor had Prillaman ever granted permission to Swoope or any other driver to use any of the equipment for personal use, and after the collision Prillaman and the general manager of the corporation reprimanded Swoope.

In *Robinson* v. *Fidelity*, *etc.*, *Co.*, *supra*, we held that whether or not there was an implied permission to use a car was a jury question. The court in that case had stricken the evidence and entered judgment for the defendant insurance company. There the owner was in the Merchant Marine and just prior to the time that he went to sea he left his car with a girl who was generally known as his wife. After he went to sea, on the day of the accident, one Beasley was driving the car for the girl, and at the time of the accident he was returning the car to her from the garage where some repair work had been done. This was in accordance with her instructions. Then the accident occurred. The evidence disclosed that the owner, before he left for sea duty, stated to the girl that he was leaving the car with her but he did not want to come back and find it wrecked. He left no other directions. We held that whether or not the driver had implied permission was a jury question.

In *Liberty Mut. Ins. Co.* v. *Tiller*, *supra*, the owner of the dump truck permitted his employee to keep the truck at his home nights. He used it to go to the store and the owner never instructed him not to use it. He also used it to go to the owner's home for his own personal benefit, and was seen so using the truck by the owner who made no objection. He put gasoline in the truck and had it repaired for his own use and sent the bills to the owner, who paid them. We held there that whether or not the employee had implied permission to use the truck was for the jury.

In *Phoenix Indemnity Co.* v. *Anderson*, *supra*, we held that in determining whether an automobile was used for the purpose stated in a policy of indemnity insurance, delivery of the automobile by assured to another with permission

to use it for a particular purpose does not carry with this permission the right of indefinite use. In that case the policy stated that the coverage extended only to the use of the truck in the business of the assured who was a merchant. He sent an employee with the truck to another city to buy produce. After this business had been completed the employee called upon a friend, took some drinks, and started home, but turned in the wrong direction. He did not attempt to remedy his mistake when he discovered it but went five or six miles to a railroad crossing where he ran into a signal box. There it was held that the use of the truck was without the permission of the assured.

In *Sordelett* v. *Mercer, supra*, it was held that permission in that case simply extended to the employee to get his supper. However, at the time of the accident he was not using the vehicle for that purpose, and the jury were instructed that if the evidence disclosed that the employee was using the truck at the time of accident to hunt up a girl companion for his fellow-worker then he was not using it under his permission to get his supper.

This court has definitely decided that in cases similar to the one at bar permission from the owner to the employee to use a motor vehicle for one purpose is not permission to use it for all purposes. *State Farm Mut. Automobile Ins. Co.* v. *Cook, supra*, and *Sordelett* v. *Mercer, supra.* Here, Swoope was authorized to use the tractor-trailer in his employer's business. He had no authority to use it for any other purpose. The fact that he kept the vehicle under his control at night and on a parking lot to allow him to get an early start with his load in the mornings and thereby advance his employer's business would not amount to an implied permission for him to use it for all purposes, including his own personal use.

The late Mr. Justice Browning, in speaking on this subject in *State Farm Mut. Automobile Ins. Co.* v. *Cook, supra*, at page 665, had this to say: "This has brought about two schools of judicial thought as to the matter with which we

are now concerned. Some courts take the view, broadly stated, that express permission for a given purpose implies permission for all purposes. *Stovall* v. *New York Indemnity Co.*, 157 Tenn. 301, 8 S. W. (2d) 473; 72 A. L. R. 1368, and annotation beginning at page 1375; *Dickinson* v. *Maryland Cas. Co.*, 101 Conn. 369, 125 A. 866, 41 A. L. R. 500.

"Other courts adhere to a somewhat stricter construction and hold that before the person using the automobile becomes an additional assured under the omnibus clause, permission must be expressly or impliedly given for that use. See cases cited in annotation, *supra*, 72 A. L. R., at page 1403.

"We hold to the latter view in Virginia. In *Sordelett* v. *Mercer*, 185 Va. 823, 40 S. E. (2d) 289, we said (185 Va. 835) in reference to the meaning of the concluding sentence of section 4326a involved here that 'the express or implied permission referred to in the statute means the express or implied permission to use or operate the motor vehicle either in the business of the owner or for any other purpose for which express permission was given or as to which it may be implied that permission was given. Permission to do a specific thing is not permission to do all things.' To the same effect are *Phoenix Indemnity Co.* v. *Anderson*, 170 Va. 406, 196 S. E. 629; *Jordan* v. *Shelby Mut. Plate Glass, etc., Co.*, 4 Cir., 142 F. (2d) 52; *Frederiksen* v. *Employers' Liability Assur. Corp.*, 9 Cir., 26 F. (2d) 76."

The judgment is reversed and final judgment will be here entered in favor of the appellant.

*Reversed and final judgment.*