### HOPSON v. SHELBY MUT. CAS. CO.
### No. 6547.

United States Court of Appeals
Fourth Circuit.

Argued March 19, 1953.

Decided April 7, 1953.

employed for several years in the capacity of laborer, handy man and lead man. Graham was also an employee of the company engaged in cutting down trees, loading brush and clearing land at construction sites.

Brown customarily used the automobile to transport laborers to and from a construction project near Newport News, to purchase equipment for his employer, and run such errands as he was ordered to do. He also had permission from Mr. Sidney Frank, who operated the Marshall Equipment Company as its president, to use the vehicle for his own personal business and pleasure, but he had specific instructions not to take the car out of town and not to lend it to anyone else. Mr. Frank also used the car on occasions and at night the car was kept at the home of either Mr. Frank or Brown, depending upon who used it last on that particular day.

On the afternoon of the accident, Brown had picked up Graham and driven him to the project where they both received their week's pay. Thereafter, Brown, who wanted to collect $2.00 from one Roberts, who lived in an area called Newsome Park, asked Graham to accompany him to point out Roberts' house. This trip was solely for Brown's benefit, the money being owed to him as a result of a personal loan. After stopping en route to see about repairing a saw for Mr. Frank, Brown and Graham proceeded to Roberts' house, and finding that he was not at home, decided to wait for him.

While awaiting Roberts' return, Graham asked Brown for permission to use the company's car to drive to his (Graham's) house some blocks away, to get a sandwich. Brown at first refused but later consented to Graham's using the car for this purpose. Instead of going directly to his home, Graham took a circuitous route, and it was on this journey that the collision occurred.

Subsequently, the plaintiff recovered a judgment against Graham in the Circuit Court of Warwick County, Virginia, for $18,532.75, as damages for personal injuries. After execution on this judgment had been returned "no effects," the plaintiff initiated this action to recover from the de-

J. Segar Gravatt, Blackstone, Va. (William V. Hoyle, Newport News, Va., on brief), for appellant.

D. W. Wilkinson, Jr., and Charles E. Ford, Newport News, Va. (Murray, Ford, West & Wilkinson, Newport News, Va., on brief), for appellee.

Before PARKER, Chief Judge, and SOPER and DOBIE, Circuit Judges.

DOBIE, Circuit Judge.

This is an appeal from a judgment of the United States District Court for the Eastern District of Virginia in favor of the defendant insurance company in an action on a liability insurance policy.

On June 18, 1949, the plaintiff, Warren H. Hopson, was injured in an automobile accident in the City of Newport News, Virginia, when the motorcycle on which he was riding was struck by an automobile owned by the Marshall Equipment Company and driven by one Ernest Graham. The car in question had been purchased by the company some three weeks prior to the accident for use in its construction business and for this purpose had been entrusted to one Benny Brown, who had been

fendant insurance company on the theory that Graham was an additional insured under the terms of the liability policy issued to the Marshall Equipment Company. The case was tried in the District Court before a jury on September 10 and 11, 1951.

At the conclusion of the plaintiff's evidence, and again at the conclusion of all the evidence, the defendant moved the court for a directed verdict. The trial court reserved decision on both of these motions and submitted the case to the jury, which was unable to agree on a verdict and was discharged. Thereafter, the defendant moved the court to enter judgment in accordance with its motions for a directed verdict as provided by Rule 50(b) of the Federal Rules of Civil Procedure, 28 U.S. C.A. The trial court sustained defendant's motion and entered judgment for the defendant on October 17, 1952. We are asked to review the correctness of this decision.

The applicable Virginia statute, Code of Virginia 1950, section 38–238, provides:

"No such policy shall be issued or delivered in this State, to the owner of a motor vehicle, by any corporation or other insurer authorized to do business in this State, unless there shall be contained within such policy a provision insuring such owner against liability for damages for death or injuries to person or property resulting from negligence in the operation of such motor vehicle, *in the business of such owner or otherwise, by any person legally using or operating the same with the permission, express or implied, of such owner.*" (Italics ours.)

The District Judge sustained defendant's motion under Rule 50(b) because, as he stated:

"From a review of the record, it is my conclusion that the plaintiff has not borne the burden imposed upon him to show either express or implied permission upon which the jury could base a verdict. Upon the contrary, the uncontradicted evidence of the defendant is to the effect that there was no permission under which Brown, the employee, could act in loaning the automobile to Graham, the driver."

It is, of course, well settled that the burden of proof rested upon the plaintiff to show that at the time of the accident Graham, the driver, was operating the automobile in question with the permission, express or implied, of the named insured, Marshall Equipment Company, and thus being himself within the terms of the policy and the provisions of the statute. Liberty Mutual Insurance Co. v. Venable, 194 Va. 357, 73 S.E.2d 366; Hartford Accident & Indemnity Co. v. Peach, 193 Va. 260, 68 S.E.2d 520. Since there was admittedly no express permission given to Graham to drive the car, plaintiff's recovery can be predicated only upon the theory that such permission was implied.

An implied permission generally arises from a course of conduct involving a mutual acquiescence in, or a lack of objection to, a continued use of the car, signifying assent. State Farm Mutual Automobile Insurance Company v. Cook, 186 Va. 658, 667, 43 S.E.2d 863, 867, 5 A.L.R.2d 594; Hinton v. Indemnity Insurance Co., 175 Va. 205, 214, 8 S.E.2d 279, 283. In view of the fact, however, that in the case at bar the automobile was purchased less than three weeks prior to the time of the accident and that Brown had never permitted Graham to drive it before that time, there is no way in which acquiescence in the use of the car by Graham could be established by past conduct. The plaintiff is, therefore, limited to showing implied permission from the circumstances surrounding the initial entrustment of the automobile by Frank to Brown. See Robinson v. Fidelity and Casualty Company of New York, 190 Va. 368, 57 S.E.2d 93.

On this point, the evidence adduced in the court below was to the effect that, although Brown had permission to use the automobile for his personal pleasure, he was specifically prohibited from lending the car to anyone else. Mr. Frank, who purchased the car for the Marshall Equipment Company, testified without contradiction:

"Q. What was the conversation and what were the instructions, if any?

A. Well, my instructions to him were—

"Q. When? A. Previous to the purchase of the car and after the car was purchased, to take the car, take care of the car, not to abuse it, see that nothing happened to it, and to only drive it himself, not to lend the car out and not to use it—not to take it out of town, not to lend it to anybody."

Likewise, the uncontradicted evidence of Mr. Frank was that Ernest Graham, the driver, at the time of this accident, had no permission to drive the car:

"Q. The question was, I believe, whether or not in any way you had authorized Ernest Graham to drive this car during the time in which he was involved in the accident? A. That's right. He had no authorization to drive it."

Further, in this connection, Brown, the bailee, testified without contradiction that Mr. Frank had told him not to let anyone else drive the car, that he had no right to let Graham use it on the day in question, and that he knew he was violating Mr. Frank's instructions when he gave Graham permission, but figured nothing would happen. On cross-examination, Brown testified:

"Q. Did you have any instructions from Mr. Frank when he first got this automobile about lending the car to anybody else? A. Yes, sir.

"Q. Did you know you were violat-lating his instructions? A. Well, at the time I knew I was violating them but I figured if he went and got him a sandwich and come back, nothing would happen.

"Q. You just figured nothing would happen? A. Yes, sir.

"Q. Figured wrong? A. Yes, sir.

"Q. What did Mr. Frank tell you when he first got this automobile? A. Not to loan it.

"Q. Not to loan it to anybody? A. Yes, sir.

"Q. Did you ever loan it to him before? A. No, sir.

\* \* \* \* \* \*

"By the Court: Q. Were those instructions of Mr. Frank's about not lending the car to anyone else—did he ever change those instructions? A. No, sir."

It also appeared from the evidence that Graham, the driver, had been employed as a casual laborer by the Marshall Equipment Company for about three or four months, that his duties did not require the driving of a car, that he had never driven the car in question or any other equipment of the company before, and that he did not have a state permit to drive an automobile.

We think that the decision of the Supreme Court of Appeals of Virginia in Fidelity and Casualty Company of New York v. Harlow, 191 Va. 64, 59 S.E.2d 872, is particularly pertinent to the proper disposition of the case at bar. In that case, an employee, Swoope, customarily kept a tractor-trailer of his employer at his home on weekends and on some nights during the week. Swoope testified that he had instructions never to detach the tractor from the trailer for personal use, that he had never been given permission by any official of the company to use the tractor for his personal use, that Mr. Prillaman, the local manager of the owner, had specifically instructed him not to do so, and that when using the tractor for his own purposes he attempted to conceal such unauthorized use from Mr. Prillaman. Swoope's testimony was corroborated to a large extent by that of Mr. Prillaman, and there was no testimony to the contrary. However, there was evidence that on several occasions prior to the accident, Swoope had used the tractor and that report of such violations had been made to company headquarters, but Swoope continued in the company's employ.

The trial court found that Swoope had implied permission to operate the tractor as he was doing at the time of the accident and entered judgment for the plaintiff against the insurance company. Reversing this judgment and entering final judgment for the insurance company, the Supreme Court of Appeals said, 191 Va. at page 68, 59 S.E.2d at pages 873–874:

"We cannot agree with the foregoing conclusion of the trial court, for here we have uncontradicted evidence of two witnesses who testify positively and definitely that Swoope was never given permission to use the tractor at any time except on the business of the owner, but on the other hand had been given express instructions forbidding him to use it for his personal benefit, and in case of a violation of the instructions he had been told that he would be summarily dismissed."

See, also, United States Casualty Company v. Bain, 191 Va. 717, 62 S.E.2d 814; Sordelett v. Mercer, 185 Va. 823, 40 S.E.2d 289.

The plaintiff relies upon the testimony of one Vann, who sold the automobile in question to Frank, and upon a purported prior inconsistent statement of Brown to show the existence of an issue for submission to the jury. The testimony of Vann was to the effect that he had attempted to sell Brown the automobile in question, that Brown stated that his boss, Mr. Frank, would have to see to it, that he afterwards exhibited the car to Mr. Frank, who said he thought he would buy the car and that at the time of the sale Mr. Frank told Vann that he was buying the car "for Benny Brown to use in his work and for Benny too." Vann also testified that he understood Brown was to keep the car in his possession, to reimburse the company for the monthly installments, and that the car would become the property of Brown. Vann testified further that when the down payment was made, Brown gave him $10.10 with which he purchased license plates for the automobile. It does not appear that Brown was ever reimbursed for this expenditure.

Commenting upon the effect of this testimony, the trial court observed:

"At most such testimony could only be regarded as a declaration of intention prior to or at the time of the purchase of the automobile *and would be totally insufficient as proof of an agreement between the Marshall Equip-*

*ment Company and Brown."* (Italics ours.)

With this conclusion we agree. This declaration of intent was made before the delivery of the automobile to Frank and before consummation of the sale. Regardless of what Frank's intention was at that time concerning the purchase of the car for Brown, the evidence clearly shows that such intention was not carried out. The car was brought by Frank for the Marshall Equipment Company, the title was registered in the corporate name, and both the down payment and the monthly installments were made by the company. Moreover, the car was incorporated under a policy of fleet insurance issued to the Marshall Equipment Company and the release of lien was also given to the company.

The plaintiff also attempted to show that a written statement of Brown taken on August 28, 1951, was inconsistent with his testimony at the trial. The statement was to the effect that his instructions were not to let anybody and everybody drive the car, whereas, on trial, he testified that he was instructed not to let anyone else drive. When questioned about this statement, Brown explained it as follows:

"Q. I understood you to say that you understood from what Mr. Frank told you that you were not to let just anybody and everybody drive the car and he asked you if you understood from what Mr. Frank told you that if you got in sime special kind of situation, where it would be some serious inconvenience to you, that it would be all right for you to let a reliable person drive the car? A. Well, I taken it like this: I might have misunderstood it but I figured he meant if he should happen to send somebody to me to drive the automobile it would be all right but excusing that, not to let anybody drive it but myself."

In view of the fact that the witness, Brown, had been present in court, had testified as to the matters contained in the statement and had been fully examined thereon, the trial court held that the statement was immaterial. The statement was admitted for

identification, subject to later ruling. Counsel for the plaintiff did not thereafter re-offer the statement nor did counsel again move the court for a ruling thereon.

We find nothing in the recent case of Liberty Mutual Insurance Company v. Venable, 194 Va. 357, 73 S.E.2d 366, which requires us to disturb the ruling of the lower court. In that case the plaintiff was riding with an employee of the Goodyear Company in a truck belonging to that company and entrusted to Rice, an employee of the company. At the time of the accident, the employee was driving the truck on his own business. The testimony of Rice's superiors was that Rice had been expressly forbidden to drive the truck on any business except the business of the Goodyear Company, and had been expressly forbidden to permit riders or passengers in the truck. The employee, Rice, was the sole witness relied upon by the plaintiff to establish the permission. He testified that he had permission to operate the truck at the time of the accident and that he had not been forbidden to pick up riders, and that he thought that the company knew he had picked up riders on previous occasions. The defendant offered a signed statement previously given by the witness, Rice, in which Rice had stated that he had been instructed not to carry riders in the truck. The lower court had refused to admit the statement in evidence.

The Supreme Court of Appeals held that the statement given by the driver, *being in direct conflict with the testimony which he had given on trial,* was material and should have been admitted. It, therefore, remanded the case for a new trial. In the instant case, there is no such conflict between the prior statement and the testimony given on trial. The statement was read to the witness Brown who admitted having made it and gave his explanation of it, and counsel for the plaintiff did not press the court for a ruling on its admissibility or except to the court's ruling which allowed it to be marked for identification only.

On the whole, we are of the opinion that the evidence of the plaintiff was insufficient to justify a submission to the jury of the question whether, at the time of the accident, Graham was driving the automobile with the implied permission of the insured, and that the District Judge properly entered judgment for the defendant in accordance with its motion.

In reaching this conclusion, we do not hold that a prohibition such as that shown in this case is absolute in all respects and under all circumstances. Indeed, it is not difficult to conceive of a situation partaking of emergency aspects which might well operate to suspend the prohibition, especially if the use being made of the car at the time was in furtherance of the purposes of the initial entrustment. However, no such situation is here presented. The evidence clearly shows that, at the time of the accident, the automobile was being driven by a third party who was a stranger to the original bailment, who had no permission to drive the car, who did not even have a driver's permit, and who was not operating the vehicle for the benefit of either the owner of the bailee, but for his own purposes.

The judgment of the District Court is, accordingly, affirmed.

Affirmed.