230 F.2d 507
 Ted LONG, John Earp, Administrator of the Estate of Carl
McClusky, Deceased; Archie Williams; Gladys Marie Williams;
Roy Henry Williams, a minor; Mary Williams, a minor; Raymond
Williams, a minor, Appellants,
v.
SUPERIOR INSURANCE COMPANY, a corporation, Appellee.
 No. 5141.
 United States Court of Appeals Tenth Circuit.
 Feb. 7, 1956.
 
 Gus Rinehart, Oklahoma City, Okl. (Carmon C. Harris, Rollie D. Thedford and Butler, Rinehart & Morrison, Oklahoma City, Okl., on the brief), for appellants.
 Duke Duvall, Oklahoma City, Okl., for appellee.
 Before HUXMAN, MURRAH and PICKETT, Circuit Judges.
 HUXMAN, Circuit Judge.
 
 
 1
 This action was begun by the Superior Insurance Company, a Texas corporation, against Ted Long, John Earp, administrator of the estate of Carl McLusky, Archie Williams, Gladys Marie Williams, Roy Henry Williams, Mary Williams and Raymond Williams, all residents of Oklahoma, under the Declaratory Judgments Act, 28 U.S.C.A. § 2201, to determine its duties under a certain automobile liability policy.
 
 
 2
 The insurance company had issued a liability policy to one Harry Long to insure a Chevrolet truck owned by him; it contained the usual omnibus clause extending coverage to 'any person while using the automobile * * * provided the actual use of the automobile is by the named insured or with his permission.' An accident involving the vehicle occurred approximately seventeen miles north of Pawhuska, Oklahoma, while it was being driven on a personal pleasure trip by defendant Ted Long, a brother of Harry Long. The other defendants herein are claiming damages arising out of the accident; they contend that Ted Long was responsible therefor and that the insurance company is obligated to defend suits against Ted Long and pay any judgments, within policy limits, which result. The purpose of the instant action is to adjudicate whether Ted Long was within the policy coverage at the time of the accident, which turns upon the question whether he was driving the car with his brother's permission.
 
 
 3
 The case came to trial before Judge Savage in the Northern District of Oklahoma. A large amount of evidence was presented in the form of oral testimony and depositions. At the conclusion of the testimony the trial judge found in favor of the insurance company, that there was no express or implied permission given to Ted Long to use this truck for the trip on which the accident occurred. The appeal presents only the question of the correctness of the lower court determination.
 
 
 4
 It was developed at the trial that Harry Long owned a tract of some 40 acres about two miles southwest of Pawhuska, Oklahoma. On the land he had two houses, one in which he lived and another some 100 yards away in which his mother and Ted Long lived. Harry Long leased a corner of his land to the City of Pawhuska for use as a city dump, and as part of the compensation he received the right to waste paper and other salvageable junk brought into the dump. For some time prior to taking a position as Chief of Police in Pawhuska, Harry engaged in the junk business and in this connection used the insured truck. After he went to work as Chief of Police he no longer kept up this business, but he retained the truck and was interested in preserving his junk rights for the eventuality that he might lose or quit this position as Chief of Police.
 
 
 5
 From time to time various of his brothers, including Ted, were out of a job, and Harry would allow them to work the dump and use the truck to haul paper. He charged nothing for the use of the truck, except that he required the users to provide gas and oil. For some months prior to the accident at issue here, Ted and an uncle who could not drive salvaged and sold whatever junk and paper were taken from the dump. In this connection they used the truck, and during all this time the customary situs of the truck was the yard of either Harry or his mother, where Ted Lived. The keys were always in the ignition or the glove compartment of the truck.
 
 
 6
 The evidence was uncontradicted that Ted had Harry's express permission to drive the insured truck around and upon the city dump. It was also clear that Ted, with the knowledge of Harry, used the truck to haul water for their mother for household and drinking purposes and took the truck to a nearby filling station to obtain gas and oil. Thus, at least implied permission existed for these uses. There was a conflict in the evidence as to whether Ted Long drove the truck to Tulsa with loads of paper; but the trial judge chose to believe that he did drive the truck to Tulsa on several occasions and that Harry Long had given implied permission for such use.
 
 
 7
 Ted Long, however, did not at this time have a driver's license. Harry testified that for this reason and because he did not want the truck worn out or torn up he strictly limited Ted's use of the truck to business purposes. Most of the evidence tended to corroborate this limitation. There was testimony that Ted hitchhiked to town when the truck was sitting in the yard, that Harry denied Ted's express requests to use the truck to go fishing, and that, except for the following, Ted was never seen driving the truck in town. The uncle, George Early, who was junking with Ted testified that Ted and he took the truck into town a couple of times but that they would always 'cross the low-water bridge, where Harry wouldn't see us.' One witness testified that on the day of the accident she saw Ted stop to talk to Harry and then drive the truck into Pawhuska behind him. Judge Savage stated that he did not believe this witness. One witness who worked for the city said that he saw Ted drive the truck into Pawhuska and park it behind the police station once, and his fellow worker thought he saw Ted driving in town twice. The judge concluded that he 'wouldn't be surprised' but what this was true, but he did not think Harry Long knew of those uses of the vehicle.
 
 
 8
 On the day of the accident it appears that Ted Long had the truck at his uncle George Early's place and that he decided to take George's coon dog to have it trained by a man who lived several miles north of Pawhuska. After making the trip and leaving the dog, Ted decided to go on into Boulanger, another four miles, to visit a little girl he helped raise. It was on this leg of the journey that the accident occurred, some seventeen miles north of Pawhuska.
 
 
 9
 There would seem to be ample evidence to support the trial court's conclusion that this pleasure trip was outside the scope of the permissive use of the vehicle, unless we must say that the dominion over the truck which Ted Long had and the temptation to personal use which was naturally present required the trial judge to find implied consent to this use of the vehicle. In Dickinson v. Great American Indemnity Co., 1937, 296 Mass. 368, 6 N.E.2d 439, 441, an argument for liability was grounded upon accessibility to the employee of a truck parked on the working premises in an unlocked garage. Answering it the court said, 'The judge was not obligated to find that an opportunity to take the truck was equivalent to the insured's consent to his using it.' Although the denial of the use of a vehicle for personal matters was clearer in Fidelity & Casualty Co. of New York v. Harlow, 1950, 191 Va. 64, 59 S.E.2d 872, that court rejected a lower court holding for liability which was specifically predicated upon the fact the truck and keys were entrusted to the employee's care every night and the natural tendency of the average person having the keys and the vehicle is to operate the same for his personal use. There was no showing of such a susceptibility to temptation on the part of Ted, known to Harry, as would require him to take extra precautions against the possible misuse of the vehicle. In our opinion the trial court was not required to impute consent to the personal use.
 
 
 10
 The only question remaining is whether notwithstanding the deviation from granted permission the insurance company ought to be held. Oklahoma law clearly governs the determination. The leading decision of that state is Lloyds America v. Tinkelpaugh, 1939, 184 Okl. 413, 88 P.2d 356, where the court discusses the three different rules as to deviation under an omnibus clause like that at issue here. It classifies the lines of authorities as: (1) those holding any deviation, no matter how slight, will defeat liability; (2) those holding that once permission is given, it will extend to any and all users of the car; and (3) those holding that slight deviation does not violate the omnibus clause. The case states that Oklahoma adheres to the third rule.
 
 
 11
 This circuit in Employers Casualty Co. v. Williamson, 10 Cir., 1950, 179 F.2d 11, had before it an Oklahoma case wherein an employer gave its employee permission to use a firm truck on Sunday to haul dirt for a Mr. Weldon, the proceeds from such hauling to be divided between the employer and the employee. After driving the truck to Mr. Weldon's and ascertaining that he was not at home, the employee started to return the truck to the place where he obtained it. While doing this he entered into an agreement with a woman to haul dirt for her and also to haul a water heater for her. On the way to the junk yard to obtain the water heater an accident occurred. The court analyzed the Oklahoma decisions and assumed for the purpose of argument that the permission to use the truck was a general permission to haul dirt. It held that the employee still was not authorized to agree to transport the water heater, and the accident was without the coverage of the omnibus clause in the liability policy. The trip on which the accident in the instant case occurred seems at least as great a deviation from the granted permission.
 
 
 12
 Affirmed.