**NATIONWIDE MUTUAL INSURANCE COMPANY, Plaintiff,**

v.

**Roger Lee VAUGHN et al., Defendants.**

**Civ. A. No. 68–C–12–H.**

United States District Court
W. D. Virginia,
Harrisonburg Division.

Dec. 22, 1969.

806

Wayt B. Timberlake, Jr., Timberlake, Smith & Thomas, Staunton, Va., for plaintiff.

Richard F. McPherson, Nelson, McPherson & Summers, Staunton, Va., for John E. Kent.

Philip Lee Lotz, Cochran, Lotz & Black, Staunton, Va., for Glenn O. Humphrey.

W. W. Wharton, Wharton, Aldhizer & Weaver, Harrisonburg, Va., for State Farm Mut. Auto. Ins. Co.

Henry M. Sackett, Jr., Williams, Robertson & Sackett, Lynchburg, Va., for Allstate Ins. Co.

## OPINION AND JUDGMENT

DALTON, Chief Judge.

On April 13, 1968, a 1966 Chevrolet Chevelle, driven by William Driver, collided on U.S. Highway 11, just north of the City of Staunton, with an automobile operated by Ernest Humphrey. Roger Lee Vaughn and Robert S. Leech, Jr., were passengers in the Chevelle. Riding with Ernest Humphrey were his wife, son and daughter. Roger Lee Vaughn was the only survivor of the accident.

As a result of this accident personal injury and wrongful death actions were commenced in the Circuit Court of Augusta County, Virginia, against the estate of William Driver. Settlement of the four Humphrey cases was made pursuant to stipulation by the parties; settlement was without prejudice to the rights or liabilities of the parties in this suit. The Chevelle was owned by Hinman Mason Strange, a friend of Driver. Strange insured the Chevelle with the Nationwide Mutual Insurance Company under a standard Virginia automobile liability policy. Driver's mother, of whose household he was a member, carried a family automobile policy with the State Farm Mutual Automobile Insurance Company. Allstate Insurance Company insured the Humphrey automobile involved in the accident.

Nationwide seeks a declaratory judgment in this suit, founded on diversity jurisdiction, 28 U.S.C. § 1332. Joined as defendants are Roger Lee Vaughn, State Farm, Allstate, the administrator of the estate of Leech and the administrator for the estates of the four Humphreys.

Nationwide's policy contained an omnibus clause as required by statute.[1]

1. Va.Code § 38.1–381; 1953 Repl.Vol., provides:

(a) No policy or contract of bodily injury liability insurance, or of property damage liability insurance, covering liability arising from the ownership, maintenance or use of any motor vehicle or any private pleasure vessel, ship, boat or other watercraft, shall be issued or delivered in this State to the owner of such vehicle or such watercraft, or shall be issued or delivered by any insurer licensed in this State upon any motor vehicle or any private pleasure vessel, ship, boat or other watercraft then principally garaged or docked or principally

Nationwide contends that Strange did not give Driver express or implied permission (as required by the statute) to drive the Chevelle. State Farm's policy affords coverage to Driver only if he had reasonable cause to believe that he had the permission of Strange to use the automobile. Allstate must provide coverage, under the uninsured motorist endorsement of its policy to Humphrey, if neither Nationwide nor State Farm is liable.

██ No party has strenuously sought realignment of the parties, but this is a matter which the court must consider of its own accord. The court is convinced that no realignment of the parties is necessary and thus diversity jurisdiction is not defeated. While Nationwide and State Farm are attempting to prove similar facts, they are also attempting to prove two separate requirements. Nationwide is attempting to prove no implied permission from Strange to Driver; State Farm is attempting to prove that Driver could not reasonably believe that he had Strange's permission to use the automobile. Although both ultimately are factual determinations, the court believes State Farm has the more difficult task.

This case is heard without a jury upon the depositions of all the necessary witnesses. The facts are as follows. Hinman Strange and William Driver were fellow students at the Blue Ridge Community College. They had become good friends during the 1967–68 school year. About 3:30 p. m. on the day of the accident, they went in Strange's Chevelle to the Elbow Room in Staunton. Shortly before 6:00 p. m., Strange lent his Chevelle to Driver to pick up a friend's clothes from the cleaners. On returning from the cleaners, Strange said to Driver, "Bill, just don't go any-

where in the car, because we are going to the party." Strange did not request a return of the keys. Driver later met Leech and Vaughn in the back of the Elbow Room and offered them a ride. They walked past Strange's table and out the front door about 7:00 p. m.; Strange did not see them leave. While out for this apparent joy ride, the accident occurred.

██ There is no assertion that there was express permission. There have been a number of Virginia cases dealing with implied permission. It is clear that under Virginia law the question of implied permission is a jury question. American Auto. Ins. Co. v. Fulcher, 201 F.2d 751 (4th Cir.1953); State Farm Mut. Auto. Ins. Co. v. Cook, 186 Va. 658, 43 S.E.2d 863, 5 A.L.R.2d 594 (1947); Hinton v. Indemnity Ins. Co., 175 Va. 205, 8 S.E.2d 279 (1940). The burden of proof is on the party claiming express or implied permission. Hopson v. Shelby Mut. Cas. Co., 203 F. 2d 434 (4th Cir.1953); Liberty Mut. Ins. Co. v. Venable, 194 Va. 357, 73 S.E. 2d 366 (1952); Hartford Accident & Indemnity Co. v. Peach, 193 Va. 260, 68 S. E.2d 520 (1952). The court finds no justification for adopting a new rule simply because this case arises from a declaratory judgment. In Virginia the omnibus clause has been strictly construed in that express permission for a given purpose does not imply permission for all other purposes. State Farm Mut. Auto. Ins. Co. v. Cook, supra; Sordelett v. Mercer, 185 Va. 823, 40 S.E.2d 289 (1946). However, it is generally acknowledged that the omnibus clause is to be literally construed. Fidelity & Cas. Co. of N. Y. v. Harlow, 191 Va. 64, 68 & 69, 59 S.E.2d 872, 874 (1950), stated:

> The law on the subject [implied permission] in Virginia has been very

used in this State, unless it contains a provision insuring the named insured and any other person responsible for the the use of or using the motor vehicle or private pleasure vessel, ship, boat or other watercraft with the consent, expressed or implied, of the named insured, against liability for death or injury sustained, or loss or damage occasioned within the coverage of the policy or contract as a result of negligence in the operation or use of such vehicle or such watercraft by the named insured or by any such person.

well settled and there is not much difficulty about it. The difficulty arises in its application to varying facts. The statute is remedial and must be liberally interpreted to subserve the clear public policy reflected in it, which is to broaden the coverage of automobile liability policies. In defining 'implied permission', and applying it to the facts of the many cases we have had, this court has been liberal in its interpretation and application, and has gone far in holding insurance carriers liable. See also, Travelers Indemnity Co. v. Neal, 176 F.2d 380 (4th Cir.1949).

Implied permission arises from either a course of conduct involving a mutual acquiescence in, or a lack of objection to, a continued use of the automobile, signifying assent. Hopson v. Shelby Mut. Cas. Co., supra; Aetna Casualty & Surety Co. v. Anderson, 200 Va. 385, 105 S.E.2d 869 (1958).

█ In cases involving social rather than business use of automobiles, implied permission is interpreted more strongly against insurers. Judge Dobie stated in Jordan v. Shelby Mut. Plate Glass & Casualty Co., 142 F.2d 52, 56 (4th Cir.1944):

> In the cases of the entrustment of the car to another for purely social purposes, a bailment for the sole benefit of the bailee, usually there exists between the bailor and bailee a rather close relationship, either kinship or friendship. * * * And, usually, as to the extended use by the bailee of the automobile going beyond the express permission of the bailor, the permission of the bailor may well be implied. The extended use is the same type of use, for social purposes, as the use expressly permitted. Thus, if a father lends his car to a son for the purpose of attending a dance at the Hilltop Country Club, it is not difficult to imply, from the whole *milieu* of surrounding facts and circumstances, permission to use the car for the purpose of driving, after the dance, to a restaurant.

But, in the instant case, the use permitted (a purely business use) falls into a whole category utterly and entirely different from the extended use, which was solely for purposes personal to the bailee and utterly foreign to the purposes of the bailor.

█ The court finds from a preponderance of the evidence that Driver *did* have the implied permission of Strange to use the Chevelle at the time of the accident. In reaching this factual determination, the court does not rely on any one fact as controlling. From the evidence as a whole, particularly the close friendship and the prior use of the car, the court finds mutual acquiescence in the use of the automobile. In finding implied permission the court relies primarily on the following facts.

Driver and Strange were close friends. Strange occasionally stayed nights at the Driver home as a guest. Practically every week-end (Friday, Saturday, and Sunday), Driver stayed at Strange's apartment. On the night of the accident, they were going to a party together in Strange's Chevelle. On the Wednesday before the accident, Strange permitted Driver to take the Chevelle to Driver's home and keep it overnight. While Strange had only purchased the Chevelle about two weeks before the accident, he had previously permitted Driver to take his former automobile home on several occasions. There was an apparent unwritten understanding between them; Driver could use the car whenever he wished as long as Strange was not going to use it. Strange testified, however, that Driver had to always expressly ask permission to use the car. Whenever they went anywhere together, Driver drove the car about fifty percent of the time. While Driver had the car in his sole possession, he was not restricted in its use. He could use it for whatever purpose he wished.

Strange had liberally allowed Driver the use of his car. Little more than one hour before the accident, Strange permitted Driver to use the car to pick up another friend's cleaning. This court

does not think it too much to infer that if Strange would allow Driver to run an errand for someone else, Strange would allow his good friend the use of the car for a short trip of his own.

Nationwide and State Farm rely on Strange's directive not to use the car as determinative of their claims. Strange described the statement as an "off the wall statement." He testified, "I didn't think anything about it, I just said 'Bill don't go anywhere in the car because we are getting ready to go to the party.'" On further inquiry Strange testified as follows:

Q Your requesting him not to use it was based on the fact you didn't want to be late for the party?

A That is what it amounted to, yes.

Q It was not to prohibit him from using it but just for it to be available for you?

A Yes, I had to take him to change and I had to change and still come back to the party.

Strange asserted that Driver understood that he had to have express permission to use the car. Strange's directive not to use the car belies any such understanding. Had Strange not contemplated that Driver might go somewhere in the car without asking, the statement need never have been made. The statement reveals that Strange realized Driver might use the car without asking permission. The fact that Driver might not ask permission did not bother Strange; what did worry him was that the car would not be available to get to the party on time.

The statement was made when Driver returned from the cleaners, shortly after 6:00 p. m. At this time Strange allowed Driver to retain possession of the keys. At least forty-five minutes expired before Driver and his two friends left on the fatal ride. During this forty-five minute period, Strange was content to drink beer and talk with friends. Driver might well assume that Strange was not as anxious to leave as his earlier statement indicated.

Strange's statement was made most importantly to keep the car available for himself when he wanted to leave. This appears to be what both parties reasonably understood. The court does not believe that Driver ever intended to disregard the *intent* of the statement. This court believes Driver had the intention only to go for a quick ride and bring the car back in time for Strange and himself to get to the party on time. The statement is not in these circumstances, standing alone, sufficient to exclude implied permission. From the close personal friendship and from the prior use of the car, this court is convinced by a preponderance of the evidence and reasonable inference to be drawn therefrom that Driver had the implied permission of Strange to use the car.

An inference to be gleaned from the testimony of Charles W. Lewis, transcript 57–58, Vol. 2, is that in the conversation with Strange on the night of the accident, that Strange was upset because Driver "had not gotten back", indicating that Strange knew that Driver was using the vehicle.

The court is likewise convinced that Driver reasonably believed that he had Strange's permission to use the automobile. If the court can say that the facts show implied permission, then certainly Driver could reasonably believe there was such permission.

For the foregoing reasons, the court finds and declares that Nationwide and State Farm afford liability coverage for the damages for which William Driver's estate becomes liable as a result of the accident, and it is so adjudged. Because there is insurance coverage, Allstate is not liable on its Uninsured Motorist Endorsement, and it is so adjudged. Each party shall bear its own costs.

The clerk is directed to send a copy of this opinion and judgment to counsel of record.