LIBERTY MUTUAL INSURANCE
COMPANY, Plaintiff,

v.

Teddy E. MUELLER et al., Defendants.

Civ. A. No. 75–0091.

United States District Court,
W. D. Virginia,
Roanoke Division.

Feb. 9, 1977.

S. D. Roberts Moore, Gentry, Locke, Rakes & Moore, Roanoke, Va., for plaintiff.

Richard C. Pattisall, Roanoke, Va., for defendants.

## OPINION AND JUDGMENT

DALTON, District Judge.

Plaintiff in this diversity action, the Liberty Mutual Insurance Company, has petitioned this court for a declaratory judgment to the effect that it has no obligation to defend the estate of Clarence Houston Caviness in the actions instituted against that estate in the Circuit Court of the City of Roanoke. These actions arose from an accident on July 8, 1972, which involved a vehicle leased from Avis Rent-A-Car of Roanoke, Virginia, and driven by Clarence Caviness. In its brief, the plaintiff admits that its insurance agreement with Avis does cover Kenneth Carrico, the lessee of the vehicle. However, plaintiff denies that its policy covers Clarence H. Caviness, because he was neither the "named insured" under the policy, nor was he driving the car with the permission, either express or implied, of the named insured, Avis, at the time of the accident. The defendants in this action, Teddy and Ronald Mueller, who were hitching a ride with Carrico and Caviness when the wreck occurred, argue conversely that when Avis gave its express permission to Carrico, that it thereby gave its implied permission to Caviness as well. Whether such implied permission existed is the only issue before the court.

From the depositions and briefs submitted by the parties, the following undisputed facts have been established. On Friday, July 7, 1972, Kenneth Carrico came to Roanoke from Pulaski, Virginia, to visit his friend, Clarence Caviness. They both had social engagements in Pulaski on the following night, and they decided to lease a car for the occasion. After unsuccessfully attempting to rent a car on Friday night, they came back the next morning and were able to secure a car from the Avis Rent-A-Car stand at the Roanoke airport. On both occasions, Carrico entered the rental office alone, and made no mention of Caviness to the rental agent. Carrico then drove the car to Caviness' apartment where the two men drank some amount of bourbon while washing up. Later, taking along a fifth of vodka, they left for Pulaski with Caviness driving. On the way, they stopped to pick up the Muellers, who were hitch-hiking. Shortly after this stop, the accident took place.

The Avis rental agreement consisted of a single sheet of paper with spaces on the front side for appropriate information to be provided by the lessee. The terms and conditions of the lease appeared on the back side in very small type. Carrico signed the agreement in the space provided on the front side. This space was situated directly below the following sentence, which was printed in red:

I have read the terms and conditions on both sides of this rental agreement and agree thereto.

Carrico was given the opportunity to read the agreement, and was given a copy to take with him. However, in his deposition, he stated that he merely glanced at the form and did not read it. Among the terms and conditions printed on the back of the form were the following:

2. The vehicle shall not be operated:

. . . . .

d) by any person other than Renter or (1) the employer, partner or an executive officer or regular employee of Renter, or (2) any member of Renter's immediate family at least 21 years of age and permanently residing in Renter's household, provided that in all cases

Renter's permission first be obtained and all such operators shall be duly qualified and licensed.

. . . . .

4. Lessor provides coverage for persons using the vehicle with the permission of Lessor (and not otherwise) in accordance with the standard provisions of an automobile liability insurance policy, a copy of which is available for inspection at the main office of Lessor on request, against liability for bodily injury, including death (limits $100,000 each person, $300,000 each accident) and property damage (limit $25,000) arising out of use of the vehicle.

The rented vehicle was covered by a Liberty Mutual Insurance Company policy made out to Checker Cab Company of Virginia, Inc., as the "named insured" under the policy. Checker Cab Company operates the Avis franchise for the Roanoke area. The policy contained the standard omnibus clause required by *Va. Code Ann.* § 38.1–381. Those covered under this policy included:

(a) The *named insured* (Checker Cab Company of Virginia, Inc.);

(b) any partner or executive officer thereof, but with respect to a *non-owned automobile* only which such *automobile* is being used in the business of the *named insured;*

(c) any other person while using an *owned automobile* or a *hired automobile* with the permission of the *named insured,* provided his actual operation or (if he is not operating) his other actual use thereof is within the scope of such permission, . . .

(d) any other person or organization, but only with respect to his or its liability because of acts or omissions of an *insured* under (a), (b), or (c) above. (Emphasis in the original).

▮ Under the facts of this case, any coverage extended to Mr. Caviness by the policy could only fall under paragraph (c) above, and would come about only if his *actual operation* of the vehicle or his other *actual use* thereof took place with the per-

mission, express or implied, of the "named insured", Avis. It is undisputed that Avis gave no express permission to operate the vehicle to anyone except Carrico. In fact, it has been established that the terms of the rental agreement specifically forbade Carrico to let anyone else operate the car, unless he obtained Avis' permission beforehand (see excerpt above). Carrico claims that he never read these terms and had no knowledge of them. However, basic contract law requires that this knowledge be imputed to him unless there is evidence that he was prevented from reading the contract by the use of fraud or coercion. *Carriers Ins. Exchange v. Truck Ins. Exchange,* 203 F.Supp. 764 (W.D.Va., 1962), affd. 310 F.2d 653 (4th Cir., 1962); *Ashby v. Dumouchelle,* 185 Va. 724, 40 S.E.2d 493 (1946). There is no such evidence of fraud or coercion in this case, and therefore, knowledge of the contract terms will be imputed to Carrico by this court. It is doubtful that Carrico's ignorance of these terms could be considered probative of implied permission on the part of Avis in any event, but given the above presumption of such knowledge, Carrico's failure to read or otherwise become aware of these terms is irrelevant to the court's resolution of this case. That resolution must result solely from a conclusion as to whether Avis gave its implied consent to Caviness' operation of the car through its *own* actions or omissions, when it gave its express permission to Carrico. *Va. Code Ann.* § 38.1–381.

▮ There have been a number of Virginia cases dealing with implied permission. It is clear that under Virginia law, the question of implied permission is a jury question. *American Auto Ins. Co. v. Fulcher,* 201 F.2d 751, 756 (4th Cir., 1953); *State Farm Mut. Auto. Ins. Co. v. Cook,* 186 Va. 658, 43 S.E.2d 863, 867 (1947). The burden of proof is on the party alleging express or implied permission. *Hopson v. Shelby Mut. Cas. Co.,* 203 F.2d 434, 436 (4th Cir., 1953); *Liberty Mut. Ins. Co. v. Venable,* 194 Va. 357, 73 S.E.2d 366, 369 (1952).

■ It is generally acknowledged that the required omnibus clause is to be liberally construed by the courts.

The statute is remedial and must be liberally interpreted to subserve the clear public policy reflected in it, which is to broaden the coverage of automobile liability policies. In defining "implied permission", and applying it to the facts of the many cases we have had, this court has been liberal in its interpretation and application, and has gone far in holding insurance companies liable. *Fidelity and Cas. Co. of New York v. Harlow,* 191 Va. 64, 68–9, 59 S.E.2d 872, 874 (1950).

■ Under Virginia law, implied permission arises from either a course of conduct involving a mutual acquiescence in, or a lack of objection to, a continued use of the automobile, signifying consent. *Hopson v. Shelby Mut. Cas. Co.,* 203 F.2d 434, 436 (4th Cir., 1953); *Nationwide Mut. Ins. Co. v. Vaughn,* 307 F.Supp. 805, 808 (W.D.Va., 1969); *Aetna Cas. and Surety Co. v. Anderson,* 200 Va. 385, 105 S.E.2d 869, 874 (1958). Further, implied permission has a negative rather than an affirmative implication. That is, a permitted act may be one not specifically prohibited, as contrasted to an act affirmatively and specifically authorized. *Coureas v. Allstate Ins. Co.,* 198 Va. 77, 92 S.E.2d 378, 382 (1956).

■ This is the basis of the defendants' arguments in favor of extending coverage to Caviness. Defendants argue that with a liberal interpretation of implied permission, the express permission given by Avis to Carrico to use the car for his own general purposes encompasses the permission to let someone else drive the car in furtherance of these same general purposes. Furthermore, defendants argue that, since "use" is a broader term than "operate", Carrico's actual "use" of the vehicle is the overriding consideration inasmuch as Carrico was "using" the vehicle even though Caviness was driving it; and that this "use" by Carrico is covered under Paragraph (c) of the rental agreement (see excerpt above). This is inaccurate reasoning. Even though it could be said that Carrico was indeed "using" the car while Caviness was driving it, this "use" was in direct violation of the terms of the rental agreement which specifically prohibited him from letting anyone else "operate" the car during his "use" of it. Therefore, it cannot be said that this *conditioned* permission to Carrico necessarily contained an implied permission to Caviness, or anyone else. In fact, the opposite conclusion must be drawn.

■ In Virginia, the omnibus statute has been construed strictly in the sense that express permission for a given purpose does not imply permission for all other purposes. *Nationwide Mut. Ins. Co. v. Vaughn,* 307 F.Supp. 805, 807 (W.D.Va., 1969); *State Farm Mut. Auto. Ins. Co. v. Cook,* 186 Va. 658, 665, 43 S.E.2d 863, 866 (1947). Further, it has been held that permission cannot be inferred where it has been explicitly denied. *Fidelity & Casualty of New York v. Harlow,* 191 Va. 64, 59 S.E.2d 872 (1950). In addition, the court is of the opinion that the distinction drawn by the Fourth Circuit Court of Appeals in *Jordan v. Shelby Mut. Plate Glass Co.,* 142 F.2d 52, 56 (1944), is equally applicable to the present situation. In that case, it was held that a stricter interpretation of "implied permission" should result when, as here, the original permission of the named insured was given in furtherance of his own business purposes. Conversely, the court felt that the more liberal interpretation of "implied permission" should result when the original permission was granted in furtherance of personal or social purposes. It is the court's considered opinion that this slightly stricter interpretation is the standard properly applicable to the instant situation.

While the court may entertain some misgivings as to the impact of the Virginia Supreme Court's interpretation of implied permission limitations in cases such as this, the status of the Virginia law on the point is clear. Applying the relevant law to the facts stated above, the court is compelled to find and declare as follows: (1) that Avis did not give Clarence Houston Caviness either express or implied permission to operate the rented vehicle, and that therefore,

(2) Liberty Mutual Insurance Company has no obligation to defend, or to extend coverage to, the estate of Clarence Houston Caviness in the actions which are currently pending against that estate, and which arose out of the accident of July 8, 1972. It is hereby ORDERED and ADJUDGED, with each party to bear its own costs.