**CONTINENTAL INSURANCE COMPANY, Plaintiff**

v.

**KENNETH BODY, Defendant**

Civil No. 78-182

District Court of the Virgin Islands

Div. of St. Croix

February 18, 1983

ROBERT ZIMMERMAN, ESQ., Christiansted, St. Croix, V.I., *of counsel*

DANTE MATTIONI, ESQ., FRANCIS X. KELLY, ESQ. (MATTIONI, MATTIONI & MATTIONI, LTD.), Philadelphia, Pa., U.S.A., *for plaintiff*

THOMAS ALKON, ESQ., Christiansted, St. Croix, V.I., *for defendant*

CHRISTIAN, *Chief Judge*

## MEMORANDUM OPINION

This declaratory judgment action to determine coverage under an automobile insurance policy was tried before the Court on November 30 and December 1, 1982. The trial was ordered on remand from the United States Court of Appeals for the Third Circuit. 682 F.2d 436 (3rd Cir. 1982). The appeal had been taken by Continental following entry of summary judgment by this court (on cross-motions for same) in favor of the defendant, Kenneth Body. 18 V.I. 76 (D.C.V.I. 1980).

At the close of all the testimony and after hearing closing arguments of counsel, the Court entered its findings of fact and also entered some, but not all of its conclusions of law. Counsel were then requested to submit post-trial briefs addressing certain pertinent questions of law. Based on the oral testimony, the submitted exhibits and briefs, and for the reasons which follow, we conclude that judgment should be entered for the defendant in all respects.

### I.

### A.

At issue in this case is an automobile insurance policy issued by Continental to Preferred Rentals, Inc., a car rental agency doing business in St. Croix, Virgin Islands as Hertz-Rent-A-Car. The relevant factual findings of the Court are set forth, in accordance with Rule 52, as follows:

(1) On August 8, 1975, Preferred rented one of its vehicles to Earl Drummond (now deceased).

(2) Drummond's daughter, Lilly, was to be married the following afternoon at St. Ann's Chapel at Estate Barren Spot, St. Croix.

(3) At that time, Earl Drummond did not own an operable vehicle. The only member of the Drummond family who did own an automobile was Lilly Drummond. Transcript, 9.

(4) At the time he rented the vehicle on August 8, Earl Drummond told Roy Trantham, the general manager of the agency, that he (Drummond) intended to use the car for the purpose of transporting members of the bridal party to the church on the following day. Id. 144 and 231–232.

(5) On the morning of August 9, 1975, Earl Drummond drove in the rented vehicle to pick up his son Ernie Drummond at the latter's residence at Estate Croixville, St. Croix. From there, they both went to the St. Joseph's auditorium where the wedding reception was to be held later in the day. Id.

(6) At the auditorium, Earl Drummond turned the keys of the vehicle over to his son and instructed him to carry out certain errands with the car. Id. At the time, Ernie Drummond was 20 years old and a licensed driver. The younger Drummond was instructed by his father generally to assist his sister, Majorie Ann Drummond, in the purchase of items she needed in her role as a bridesmaid. He was instructed more specifically, first, to transport certain of the bridesmaids to the home of a seamstress, Mrs. Loumis Knox, where they were to be dressed for the wedding, and secondly, to bring those bridesmaids to the church in time for the wedding. Id. 49. Ernie Drummond testified, and the Court so finds, that his father gave him no "special instruction" regarding who should or should not operate the rented vehicle. Id. at 57.

(7) In accordance with his father's instructions, Ernie Drummond first drove his sister, accompanied by one of her friends, to the Sunny Isle Shopping Center and later drove back to the auditorium to pick up those bridesmaids who were to go to the seamstress. From there, he drove those members of the wedding party to the home of Mrs. Knox, at Estate White Lady, St. Croix. Id.

(8) After dropping off the bridesmaids at the home of the seamstress, Ernie Drummond drove the rental car to his residence in Croixville. At the apartment were his uncle, Kenneth Body (with whom he shared the apartment) and his cousin, Lester Poole, both of whom were to be ushers at the wedding ceremony. Id. 103.

(9) After arriving at his home, it appears from the evidence that Ernie Drummond rightly believed that by returning himself to retrieve the bridesmaids as originally planned, they would be late for the 5:30 p.m. wedding. As he yet had to shower and dress for the wedding and because Kenneth Body was, at that point, dressed for

the wedding, he (Ernie Drummond) asked Body to do the following: (a) pick up the bridesmaids at the home of the seamstress while he bathed and dressed; and (b) return to the apartment (by which time he would presumably be dressed for the ceremony) so that he and Poole could join the rest of the party and proceed directly to the church. Body agreed and Ernie Drummond then handed the keys to the rental car to his uncle Body. Id. 58, 103.

(10) Ernie Drummond transferred control of the rental car to the defendant Kenneth Body solely to avoid the almost certain delay in the arrival at the ceremony of the members of the wedding party who he had been instructed by his father to transport. Ernie Drummond requested Kenneth Body to do no more than carry out one of the tasks which he himself had initially been requested by Earl Drummond to perform.

The evidence established that, in accordance with Ernie Drummond's request, Kenneth Body drove alone to the home of the seamstress at Estate White Lady. Upon arrival he picked up the six bridesmaids. Although certain circumstantial evidence suggested that Earl Drummond was present at the home of the seamstress at the time Body arrived and further that he (Drummond) had a conversation with Body, the Court finds, weighing all the pertinent testimony, that it is unlikely that Earl Drummond was actually present during the time that Body was at Estate White Lady. Accordingly, there is no credible evidence to support a finding that Earl Drummond, at any time on August 9, 1975, either directly transferred control of the vehicle to Body or expressly permitted Body to operate the vehicle.

(12) After departing from White Lady, Body drove the bridesmaids, as instructed by Ernie Drummond, back to his apartment at Croixville, at which time Ernie Drummond and Lester Poole joined the group then in the car. The testimony established that in order to avoid further delay, Body (with Ernie Drummond's assent) did not relinquish control of the wheel. Body thus continued to drive the rental car upon departing from Croixville. Id. 51, 108. There were, at this point, nine persons in the car, all of whom were members (bridesmaids or ushers) of the bridal entourage.

(13) The vehicle was being used during the period in which Body drove for one purpose: namely to transport certain members of the Drummond family wedding party to St. Ann's Church. No evidence whatsoever was adduced to suggest that the automobile or its passengers deviated at all from that purpose or detoured from the most direct route to achieve that purpose.

(14) En route from Croixville to the church in Barren Spot an accident involving the rental vehicle took place on Centerline Road. It is that accident which gave rise to the present action for a declaratory judgment of non-coverage of Body under the terms of plaintiff's insurance policy.

## II.

### A.

The Court of Appeals remanded this case for trial because it concluded that the facts as presented in the cross-motions for summary judgment had not been established with the certainty required by Rule 56. The appellate court stated that "the facts are simply not free from dispute as regards, who, if anyone, handed over the car to Bodie [sic], and for what purpose." Id. at 439. Nevertheless, the remaining factual issues to be resolved on remand were relatively circumscribed. The court described them as follows:

> The question of how Bodie [sic] came into control of the car, and the exact nature of his use of the car are material issues of fact which go to whether that use was authorized by, or for the purposes and benefit of the insured's permittee, Earl Drummond, and thus whether as driver of the car Bodie [sic] is an additional insured under the omnibus clause.

Id.

Breaking down those inquiries into separate components, we found, based upon the proffered testimony and exhibits that: (a) the named insured's permittee (Earl Drummond) expressly authorized the operation and use of the vehicle to Ernie Drummond; (b) the purpose for which he granted permission for use of the vehicle was the transportation of members of the bridal party on certain wedding related errands on the date of the wedding; (c) that Earl Drummond did not expressly entrust the vehicle to Kenneth Body or expressly authorize his operation of the vehicle; (d) that Kenneth Body came into control of the vehicle when Ernie Drummond requested that he (Body) drive to pick up the bridesmaids in his stead; and (e) that at the time of the accident, Kenneth Body was using the vehicle in furtherance of the exact purposes which Earl Drummond had initially authorized.

### B.

At trial it was determined that neither the named insured (Preferred) nor its original permittee (Earl Drummond) had

475

expressly authorized Kenneth Body to drive the vehicle in question. However, that finding by itself does not, as plaintiff contends, preclude coverage for Body under the terms of the policy. The long established rule in coverage cases is that where the driver is operating the vehicle within the time, place and purpose of the permissive use granted to another,[1] it is "immaterial that he as an individual had no express permission from the named insured to operate it". Maryland Casualty Company v. Marshbank, 226 F.2d 637, 640 (3rd Cir. 1955) (applying Pennsylvania law). The evidence here conclusively established that the use to which the vehicle was being put at the time of the accident not only fit within the scope of permission granted by Earl Drummond, it actually coincided with the principal mission that Drummond had intended for the car.

■ The absence of an express entrustment of the vehicle by the insured to a subsequent permittee cannot, in and of itself, amount to a departure or even a deviation from the scope of the initial permission. Indeed, the omnibus clause in question extends coverage to permittees for their "actual use" but is silent as to permission to "drive" or to "operate". Hence logic dictates that the determination of coverage must initially focus, as the Marshbank court put it, on the *"employment"* of the vehicle "for some purpose or object of the user" rather than on the *individual* who happens to be driving while the vehicle is being so employed. 226 F.2d at 639. (Emphasis added.) It is clear that one may be able to grant permission for the "use" of a vehicle for a particular purpose without expressly designating which individual or individuals may or may not "operate" the vehicle.[2] So long as the purpose of the user is among the "actual" or particular[3] uses contemplated by the named insured, and, con-

---

[1] The case law appears to analogize the "permissive use" cases to respondeat superior cases in which the trier must focus on such factors as whether the conduct of the servant "occurs substantially within the authorized time and space limits" and "is actuated, at least in part, by a purpose to serve the master." Restatement (Second) of Agency § 228(1) (1958).

[2] In Selected Risk Insurance Co. v. Travelers Insurance Co., 287 A.2d 675 (Del. Super. 1972), a case on which plaintiff heavily relies, the court declined to apply the majority rule on coverage for permittees not because there was an absence of express entrustment, but because the omnibus clause at issue specifically required that *"actual operation"* as well as "actual use" be within the scope of initial permission. As the terms of the omnibus clause in the present case are not so restrictive, Selected Risk is readily distinguishable. See also, Liberty Mutual Insurance Co. v. Mueller, 432 F.Supp. 325 (W.D. Va. 1977), aff'd, 570 F.2d 508 (4th Cir. 1978) (similar restriction as to actual "operation").

[3] "The words 'the actual use' really mean 'the particular use.'" Conrad v. Duffin, 44 A.2d 770, 772 n.2 (Pa. Super. 1945) (Conrad was relied upon in Marshbank).

476

versely, is not accomplished in a method far exceeding the authorized time and place limits, coverage must be extended to the user regardless of whether an express authorization had been given to him by the insured or its original permittee. Allstate Insurance Co. v. National Mutual Insurance Co., 273 A.2d 261 (Del. 1970); Odolecki v. Hartford Accident and Indemnity Company, 264 A.2d 38 (N.J. 1970); Indemnity Insurance Company v. Metropolitan Casualty Company, 166 A.2d 355 (N.J. 1960).

## C.

■ Plaintiff attempts to distinguish certain of the above-cited cases by pointing to the absence of the named insured's permittee (Earl Drummond) from the automobile at the time of the accident. However, the Court of Appeals has, in this case, already (and unambiguously) held that the "[a]bsence of the permittee of . . . Continental's insured from the vehicle . . . does not necessarily bar coverage of Bodie [sic]." 682 F.2d at 440. Similarly in Buntin v. Continental Insurance Company, 583 F.2d 1201 (3rd Cir. 1978), a case involving the same policy, the same insured and a question of coverage to an individual other than the insured's immediate permittee, the Court held that "the rental agency, and in turn its insurer, should have foreseen that the rental vehicle might well have come into the hands of a person other than the rentee." Id. at 1207. While the presence or absence of the named insured's permittee in the vehicle might very well have a bearing on the critical factual question of whether the use of the vehicle was actually within the scope of the permissive use at the time of the accident, it is not sufficient to determine the extent of coverage. Where independent evidence supports the conclusion that at the time of the accident, there had been no measurable deviation from the scope of the permissive use intended by the original permittee, the omnibus clause must be applied to a subsequent permittee even though the original permittee is not physically present in the vehicle.[4]

## D.

The final argument advanced by plaintiff centers on the number of successive transferees to whom the control of the vehicle fell.

---

[4] A "'second permittee' is covered by a policy's omnibus clause where the 'first permittee' is present in the car at the time of the accident *or* where the operation of the vehicle by the second permittee is serving some purpose of the original permittee." American Motorists Insurance Co. v. Samson, 596 F.2d 804, 808 (8th Cir. 1979) (applying North Dakota law) (emphasis added).

Plaintiff seeks to distinguish the present case from those previously cited on the basis that the driver here, Body, represents a "third link" in the chain of transfer from the named insured whereas in each of the other cases, the driver to whom coverage was extended, was merely a "second link" in that chain.

■ We conclude that for purposes of determining who is an additional insured within the meaning of the "actual use" language of the standard omnibus clause, the number of successive permittees cannot, in and of itself, terminate coverage. We reach this conclusion for the several reasons.

■ Firstly, while no case could be found in which coverage was extended to a transferee, who like Body was twice removed from the original permittee, such a distinction has no legal significance under the facts presented here. The Court of Appeals instructed that the record in this matter establish more certainly whether the use of the vehicle had been "for the purposes and benefit," not of the *named insured*—Preferred Car Rentals, Inc.—but rather of *"the insured's permittee*, Earl Drummond." 682 F.2d at 439 (emphasis added). The Court recognized that where the insurance policy at issue names a car rental business as the insured, the question of "purposes and benefits" under the standard onmibus clause must of course focus on the intention of the initial permittee inasmuch as he, and not the rental agency, is the one to make "actual use" of the vehicle as defined by the policy. Under this analysis then, Body is no further removed from the party whose grant of permission is relevant, than were the drivers in Maryland Casualty Co. v. Marshbank, supra, Allstate Insurance Co., supra or Indemnity Insurance Co., supra. See also, Buntin v. Continental Insurance Company, supra, 583 F.2d at 1205.

Secondly, the "actual use" language of the omnibus clause lends no support to a limitation on the number of subsequent permittees who may properly be deemed additional insureds. As with a restriction on permission to "operate" the vehicle, the insurer is also free to specifically confine coverage to the initial permittee or even to the named insured. Because the crucial inquiry in permissive use cases is the intent of the original permittee with respect to the time, place or places, duration and particular purpose of the authorized use, the fact that physical control of the vehicle is subsequently transferred more than once cannot be dispositive on the question of coverage. Obviously, the number of successive transfers will go to the question of whether and at what point there was a deviation from the initial

permission. A transfer by means of theft or tortious conversion plainly would amount to such a departure from permissive use. The "rule against a perpetuity of permittees" which plaintiff so vigorously endorses is thus already embodied in the "scope of permission" analysis[5] which the trier must initially make.

■ Finally, it must be remembered that "a liability insurance contract is for the benefit of the public as well as for the benefit of the named insured or additional insured." Odolecki v. Hartford Accident and Indemnity Company, supra, 264 A.2d at 42. Indeed as we noted in our earlier Memorandum in this case, the clear legislative policy of Virgin Islands specifically requires automobile lessors to carry minimum liability insurance and provides stiff penalties for their failure to do so. 20 V.I.C. §§ 415–423 ("Regulation of Car Rental Business").[6] The presence of a statute which specifically assigns financial responsibility for wrongful injuries caused by a rental driver plainly militates in favor of an expansive application of a policy's omnibus clause particularly where, as in the present case, the clause does not exclude coverage to a permittee or otherwise restrict permitted use. See American Home Assurance Co. v. De Freitas, 18 V.I. 26 (D.C.V.I. 1980) (sections 418 and 703(b) mandate coverage "where the [rental] vehicle is used for a permitted purpose, even though the named insured did not expressly authorize the driver to use the vehicle").

### III.

■ The Court of Appeals stated in this case that "there comes a point at which it can be said that coverage [under the omnibus clause] ought to be extended no further." 682 F.2d at 440. We believe that point is to be in each case determined by reference to the scope of permission intended by the insured and by any substan-

---

[5] It is for this reason that Aetna Casualty and Surety Co. v. DeMaison, 213 F.2d 826 (3rd Cir. 1954) is inapposite. Coverage could not be properly extended to the driver in that case precisely because the "actual use" to which the vehicle was being put at the time of the accident significantly deviated from the time and place restrictions imposed by the named insured. The departure from permitted use, not the number of successive transferees, defeated coverage. See also, Ware v. Royal Indemnity Corp., 411 F.2d 1011, 1012 (10th Cir. 1969), cert. denied, 396 U.S. 1058 (1970) (employee who used an automobile rented by employer for a "personal recreational mission" departed from the usual course of the employer's business and therefore was not an additional insured).

[6] See also, 20 V.I.C. § 703(b) ("An owner's policy . . . shall insure the person named . . . and any other person . . . using . . . such vehicle . . . with the express or *implied permission of* such *named insured,* against loss . . . imposed by law for damages arising out of the . . . *use* of such vehicle . . .") (emphasis added).

479

tial departure from that permission. Although the question of whether the secondary permittee was given direct authorization is one factor in the totality of circumstances which the trier must examine (and on which the Court of Appeals here expressly remanded), it is not conclusive on the issue of coverage. Where the applicable omnibus clause does not expressly exclude subsequent users and where a secondary permittee's use is wholly consistent with the particular use or uses initially contemplated by the insured or its original permittee, we hold that the secondary permittee is an additional insured within the meaning of the insurance policy.

We need not reach the question of whether this jurisdiction ought to adopt, as defendant urges, the so-called "initial permission" doctrine which provides that if a person is given direct authorization to use a vehicle, *any* subsequent use, short of theft or conversion, is within the scope of permissive use under the terms of the standard omnibus clause. See, United States Fidelity and Guaranty Company v. McManus, 356 N.E.2d 78 (Ill. 1976); Odolecki v. Hartford Accident and Indemnity Company, supra. As we have concluded that the driver in this case is entitled to coverage based upon the express terms of the insurance contract at issue, we leave for another day the question of whether and to what extent the initial permission rule should be applied in automobile insurance cases.

## V.

For all the foregoing reasons we conclude that at the time of the accident in question, Kenneth Body was an additional insured within the meaning of the insurance policy issued by Continental to Preferred Rentals. Accordingly, judgment will be entered for the defendant.

## JUDGMENT

This action came on for trial before the Court on November 30 and December 1, 1982, and the issues having been duly tried and briefed and findings of fact and conclusions of law having been duly rendered,

IT IS ORDERED, ADJUDGED AND DECREED that judgment be and the same is hereby entered in favor of the defendant, Kenneth Body, and the said defendant recover of the plaintiff his costs of the action including reasonable attorneys fees.